STATE OF NORTH CAROLINA v. JAMES HARRISON STEWARDSON

No. 767SC634

(Filed 16 February 1977)

1. Arrest and Bail § 3— right to arrest for felony without warrant

An officer had probable cause to arrest defendant without a warrant for the felony of manslaughter where the officer had reasonable cause to believe that defendant, while under the influence of intoxicating liquor, had driven his car across the median of a highway, struck two vehicles, and killed the two occupants of one of the vehicles.

2. Automobiles § 126— breathalyzer test — effect of illegal arrest

Even if defendant's arrest was illegal, such illegality would not render inadmissible the results of a breathalyzer test administered to

defendant after his arrest since the right to administer a breathalyzer test depends solely upon the law enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on a highway or public vehicular area while under the influence of intoxicating liquor. G.S. 20-16.2(a).

**3. Automobiles § 126— breathalyzer test — request in presence of breathalyzer operator**

Breathalyzer test results were not inadmissible on the ground that the request of the arresting officer to take the test was not made in the presence of the breathalyzer operator where the arresting officer testified that he made such request in the presence of the breathalyzer operator.

**4. Automobiles § 126— breathalyzer test results — failure to hold voir dire**

Breathalyzer test results were not inadmissible because the trial judge failed to conduct a *voir dire* to determine if defendant had been advised of his rights as required by G.S. 20-16.2(c) where there was evidence before the court that defendant had been fully advised of his rights.

**5. Automobiles § 127— breathalyzer test — inability to consent — implied consent**

A breathalyzer test was validly administered to defendant even if the evidence supported his contention that he could not understandingly consent to the test because of injuries received in an automobile accident since defendant's implied consent to the test by driving on a highway was not withdrawn by the fact that he was unconscious or otherwise in a condition rendering him incapable of refusal. G.S. 20-16.2(b).

**6. Automobiles § 113— drunken driving — involuntary manslaughter — sufficiency of evidence**

The evidence was sufficient for the jury in a prosecution for involuntary manslaughter where the State's evidence tended to show that defendant drove his automobile on a public highway while under the influence of intoxicating liquor, crossed the median of a four-lane highway and struck two vehicles traveling in the opposite direction, and where it was stipulated that two persons died as a result of injuries received in the collision with defendant's automobile.

APPEAL by defendant from *Cowper, Judge*. Judgment entered 19 March 1976 in Superior Court, WILSON County. Heard in the Court of Appeals 12 January 1977.

Defendant was tried on two bills of indictment, each charging him with the felony of manslaughter arising out of an automobile collision. One bill involved the death of Marissa Watkins Wible, and the other involved the death of Jack Allen Wible,

both of whom were occupants of a vehicle struck by defendant's vehicle.

Evidence for the State tends to show the following: On 16 February 1975 at approximately 6:00 p.m., it was cloudy, dark, and raining. One Johnny Strickland was driving his automobile south on Highway 301 in Wilson County, about one mile south of the corporate limits of the city of Wilson. The Wible automobile (the vehicle occupied by the two victims) was also traveling south on Highway 301. At this point Highway 301 is a four-lane highway with two lanes for southbound traffic and two lanes for northbound traffic. The northbound lanes and southbound lanes are divided by a painted median. The Strickland vehicle was in the inside or left lane for southbound traffic, and the Wible vehicle was in the outside or right lane for southbound traffic. The Wible vehicle was to the right and slightly to the rear of the Strickland vehicle, both traveling 40 to 45 miles per hour.

Defendant was traveling alone, driving his automobile north on Highway 301 in the inside or left lane for northbound traffic. Defendant's vehicle crossed the median, struck the right side of the Strickland vehicle, and then crashed into the Wible vehicle. As a result of the collision, the two occupants of the Wible vehicle were killed, and defendant suffered numerous broken bones and abrasions. Presumably none of the occupants of the Strickland vehicle was seriously injured.

There were several cans of beer in defendant's vehicle, one of which was punctured in the collision and had leaked out in the car. During the removal of defendant from his vehicle, a strong odor of alcohol was noticed in his vehicle. When the investigating officer saw defendant in the emergency room at the hospital, he detected the odor of alcohol on defendant's breath and after further observation formed the opinion that defendant was under the influence of alcohol. The officer warned defendant of his constitutional rights and advised him that he was under arrest for manslaughter. A breathalyzer machine was brought to the hospital by an operator. After being advised of his rights with regard to the breathalyzer test, defendant took the test. The result of the test showed 0.15 percent of alcohol by weight in defendant's blood. When the operator advised defendant of the test results, defendant asked, "That's too much, isn't it?" The operator answered, "Yes, sir."

---

**State v. Stewardson**

---

Defendant offered no evidence.

Upon verdicts of guilty of both charges, the trial judge consolidated the charges and entered one judgment of imprisonment for a term of six years.

*Attorney General Edmisten, by Associate Attorney Richard L. Griffin, for the State.*

*Farris, Thomas & Farris, by Robert A. Farris, for the defendant.*

BROCK, Chief Judge.

**[1]** Defendant argues that evidence of the result of the breathalyzer test should have been suppressed because the arrest was illegal. Defendant urges that he was arrested without a warrant for the misdemeanor of driving under the influence of intoxicating liquor. From this basic premise he argues that none of the circumstances required by statute to authorize an arrest without a warrant for a misdemeanor was shown to exist in this case, *id est,* no showing of probable cause to believe that defendant had committed an offense in the officer's presence (G.S. 15A-401[b][1]), and no showing that defendant would not be apprehended or that he may cause damage to himself, others, or property unless immediately arrested (G.S. 15A-401[b][2]b. 1. and 2.). Defendant's argument of the statutory authority to arrest without a warrant appears sound. However, we do not agree with the basic premise upon which he makes the argument. In our view the arrest was for the felony of manslaughter. There was a showing that the officer had probable cause to believe that defendant had committed a felony. "An officer may arrest without a warrant any person who the officer has probable cause to believe . . . has committed a felony . . ." G.S. 15A-401(b)(2)a. Through his investigation the officer had reasonable cause to believe that defendant had driven his vehicle while under the influence of intoxicating liquor and that he had driven his vehicle across the median of the highway, struck one vehicle, and crashed into a second vehicle, killing the two occupants. Even so, defendant argues that the officer advised the defendant he was under arrest for driving under the influence—a misdemeanor. We do not agree. According to the record on appeal, the officer testified as follows: "I advised him in my opinion that he was under the influence and warned him of his Constitutional Rights and

arrested him and advised him that he would be under arrest for manslaughter and asked him if he would object to taking the breathalyzer test." Though rather awkwardly put by counsel's narration of the testimony, we think it is clear that the officer arrested defendant for the felony of manslaughter and so advised him.

[2]   If defendant's argument that his arrest was illegal could be sustained, that, standing alone, would not justify suppressing the evidence of the result of the breathalyzer test. General Statute 20-16.2(a) provides in pertinent part:

". . . The test or tests shall be administered at the request of a law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on a highway or public vehicular area while under the influence of intoxicating liquor . . ."

In commenting upon the above-quoted. portion of the statute, the Supreme Court in *State v. Eubanks,* 283 N.C. 556, 196 S.E. 2d 706 (1973), had this to say: "It is apparent from the emphasized portion of the statute that administration of the breathalyzer test is not dependent upon the legality of the arrest but hinges solely upon 'the . . . law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on a highway or public vehicular area while under the influence of intoxicating liquor.' It follows that defendant's motion to. suppress was properly denied." *Id,* p. 561.

[3]   Defendant further argues that evidence of the result of the breathalyzer test should have been suppressed because the request of the arresting officer to take the test was not made in the presence of the breathalyzer test operator as required by G.S. 20-16.2(c). If we were convinced that such a request were mandatory in all cases, defendant's argument in this case would nevertheless be frivolous. The arresting officer, without contradiction, testified that he called Trooper King on the patrol radio to bring the breathalyzer instrument to the emergency room and that Trooper King arrived shortly thereafter. The arresting officer then testified that he told defendant, "I'm going to request that you submit to a Breathalyzer test," and that defendant nodded his head. The arresting officer even went so far as to explain why he asked in the presence of the operator. He stated, ". . . to make the test legal I have to ask him

in the presence of the Breathalyzer operator to take the test . . ."

**[4]** Defendant seems to argue that the evidence of the result of the breathalyzer test was inadmissible because the trial judge failed to conduct a *voir dire* to determine if defendant had been advised of his rights as required by G.S. 20-16.2. He cites *State v. Shadding*, 17 N.C. App. 279, 194 S.E. 2d 55 (1973), *cert. denied*, 283 N.C. 108, 194 S.E. 2d 636 (1973). The holding in *Shadding* is inapplicable to this case. In *Shadding* the State offered no evidence that defendant had been advised of his rights as required by G.S. 20-16.2, and defendant objected to the introduction in evidence of the breathalyzer test specifically upon that ground. In the present case the evidence already before the court was that defendant was fully advised of his rights as required by G.S. 20-16.2. This argument is without merit.

**[5]** Defendant's final argument upon the admission of evidence of the result of the breathalyzer test concerns defendant's inability to consent to the test. Defendant argues that because of his physical injuries and resulting mental condition, "defendant could no more consent understandingly to this test than could an infant." If this argument were supported by the evidence, the statute would nevertheless authorize the test to be given. General Statute 20-16.2(b) provides: "Any person who is unconscious or who is otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by subsection (a) of this section and the test or tests may be administered, . . . " This argument is without merit.

We note that defendant's brief continually refers to suppressing the evidence of the results of the breathalyzer test. According to the record on appeal, defendant only objected generally to the evidence. Defendant has made no showing that he made a motion to suppress in accordance with G.S., Chap. 15A, Art. 53. In any event, we conclude that evidence of the breathalyzer test was properly admitted in evidence.

Defendant advances two further arguments concerning admission of testimony from the arresting officer. We do not feel that a discussion is justified. We have considered them carefully and find no prejudicial error.

**[6]** Defendant argues that it was error to deny his motion to dismiss for failure of the State to present evidence sufficient to

submit to the jury. Defendant cites *State v. Hewitt*, 263 N.C. 759, 140 S.E. 2d 241 (1965), and *State v. Markham*, 5 N.C. App. 391, 168 S.E. 2d 449 (1969), in support of his argument for dismissal. Those two cases are clearly distinguishable on their facts and give no support to the resolution of the question of the sufficiency of the evidence in this case.

It was stipulated that Marissa Watson Wible and Jack Allen Wible each died as a result of injuries received in the collision between defendant's vehicle and the Wible's vehicle. The State's evidence tends to show that at the time of the collision defendant was operating his motor vehicle on a public highway while under the influence of intoxicating liquor. While so operating his vehicle in a northerly direction on a four-lane highway, defendant drove his vehicle across the median so far that he struck the Strickland vehicle, which was traveling south in the inside lane for southbound traffic, on the right front with the right side of defendant's vehicle. Defendant's vehicle then collided with the Wible vehicle, which was in the outside lane for southbound traffic.

"An intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence." *State v. Cope*, 204 N.C. 28, 167 S.E. 456 (1933). General Statute 20-138 is a statute designed for the protection of human life or limb. It provides: "It is unlawful . . . for any person who is under the influence of intoxicating liquor to drive or operate any vehicle upon any highway . . . within this State." Death caused by a violation of G.S. 20-138 may constitute manslaughter. *State v. Griffith*, 24 N.C. App. 250, 210 S.E. 2d 431 (1974), *cert. denied*, 286 N.C. 546, 212 S.E. 2d 168 (1975). A precedent to a conviction of manslaughter for the violation of G.S. 20-138 is that its violation must have caused the accident and death of the victim. In our opinion the evidence in this case is sufficient to justify, but not compel, the jury's finding that defendant violated G.S. 20-138 and that such violation was a proximate cause of the death of Marissa Watson Wible and Jack Allen Wible. The trial judge did not err in the denial of defendant's motion to dismiss.

Defei. lant assigns error to several portions of the trial judge's instructions to the jury. We have reviewed each of these. When the instructions are considered in context and as a

whole, they adequately present the case to the jury under applicable principles of law. These assignments of error are overruled. In our opinion defendant received a fair trial free from prejudicial error.

No error.

Judges BRITT and MORRIS concur.