STATE OF NORTH CAROLINA v. KEVIN MICHAEL CROW

No. COA05-253

(Filed 20 December 2005)

## 1. Motor Vehicles— driving while impaired—sufficiency of evidence—motorized scooter

The trial court did not err by denying defendant's motion to dismiss the charge of driving while impaired even though defendant contends there was insufficient evidence to show a violation of N.C.G.S. § 20-138.1 when the motorized scooter with two wheels arranged in tandem that defendant was riding could not be considered a vehicle within the meaning of the statute, because: (1) by its express terms, the statute does not apply to horses, bicycles, or lawnmowers, but encompasses all other vehicles defined by N.C.G.S. § 20-4.01(49), and defendant does not fall under any of the exceptions; (2) there is no evidence that defendant was using the scooter for anything other than strictly recreational purposes, and adding the term "mobility enhancement" in the statute was a technical change that did not substantively expand the existing mobility impairment exception to the term "vehicle"; (3) defendant's scooter was not self-balancing, and the wheels on the scooter were arranged one behind the other, or in tandem, thus foreclosing the possibility that it may be considered an electric personal assistive mobility device; and (4) the evidence at trial showed that defendant's breath alcohol concentration following arrest was 0.13 which was well over the 0.08 limit found in N.C.G.S. § 20-138.1(a)(2).

## 2. Motor Vehicles— driving while impaired—sufficiency of evidence—fair notice of prohibited acts

The trial court did not err by denying defendant's motion to dismiss the charge of driving while impaired based on the

grounds that N.C.G.S. § 20-138.1 and its associated statutory scheme fail to give fair notice of acts to be prohibited, because: (1) based on the language and purpose of N.C.G.S. § 20-138.1 to protect the lives of motorists and pedestrians, an average person exercising common sense should have known that operating a motorized scooter while impaired would subject him to the penalties of the statute; (2) both N.C.G.S. §§ 20-138.1 and 20-4.01(49) are broadly applicable to "any vehicle" with only narrow explicit exceptions; (3) the statutory scheme makes clear that a person riding something other than one of the enumerated exceptions to the term vehicle is engaged in conduct prohibited by N.C.G.S. § 20-138.1, and the conclusion also follows from the purpose of the statute to protect human life on the roadways of this state; (4) defendant's behavior subjected a hundred pedestrians in the immediate area, along with automobile traffic, to a high degree of danger; and (5) the absence of a motorized scooter from the list of exceptions is indicative of the General Assembly's intent to include such devices in the statutory definition of vehicle.

**3. Motor Vehicles— driving while impaired—instructions— redacted version—vehicle**

The trial court did not err in a driving while impaired case by submitting a redacted version of the statutory definition under N.C.G.S. § 20-4.01(49) of the term "vehicle" as part of the court's instructions to the jury which excluded the exceptions for mobility impairment and electric personal assistive mobility devices, because: (1) the omission was not likely to mislead the jury when the redacted portions were not relevant to defendant's case; (2) there was no evidence presented at trial that defendant suffered from a mobility impairment or was using the scooter for mobility enhancement; and (3) defendant's scooter does not fall within the definition of "electric personal assistive mobility device" found in N.C.G.S. § 20-4.01(7a).

Appeal by defendant from judgment entered 14 September 2004 by Judge Thomas D. Haigwood in Hyde County Superior Court. Heard in the Court of Appeals 14 November 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Patricia A. Duffy, for the State.*

*Bass, Bryant & Fanney, P.L.L.C., by John K. Fanney and James K. Jackson, for defendant-appellant.*

STATE v. CROW

[175 N.C. App. 119 (2005)]

MARTIN, Chief Judge.

Defendant was found guilty by a jury of driving while subject to an impairing substance in violation of N.C. Gen. Stat. § 20-138.1 (2003) and sentenced to a term of nine months imprisonment. The execution of the sentence was suspended, and defendant was placed on supervised probation for twelve months. As a condition of probation, defendant was required to serve fourteen days in the custody of the sheriff. He appeals from the judgment.

The evidence at trial tended to show that on 24 May 2003, Officer Shane Bryan of the Hyde County Sheriff Department was traveling south in a marked patrol vehicle on Ocracoke Island and observed defendant and another individual run a stop sign. At the time, both defendant and his companion were riding "stand-up scooters." Each scooter was powered by an electric motor and was likened at trial to a skateboard with handlebars on the front. The scooters had two wheels, each approximately six to eight inches in diameter and arranged in tandem much like the wheels of a bicycle. Officer Bryan observed defendant traveling at approximately ten miles per hour.

After running the stop sign, defendant and the other individual were observed weaving erratically within their lane of traffic. Officer Bryan followed them for about a block and a half, and then used his patrol vehicle's public address system to advise the pair to pull over. Defendant's companion complied, but defendant ignored the request and continued riding. Officer Bryan pursued defendant and asked him to pull over some six blocks down the highway. Defendant exited into a parking lot. Officer Bryan followed and got out of his car to speak to defendant.

During their conversation, Officer Bryan noticed a strong odor of alcohol. In addition, defendant had glassy, bloodshot eyes and slurred speech, and he was unsteady on his feet. Based on his observations, Officer Bryan asked defendant to submit to a field sobriety test, which he refused. Officer Bryan then took defendant into custody and called for assistance.

Trooper Brandon Craft of the North Carolina Highway Patrol arrived on the scene approximately five to ten minutes later and placed defendant in the back of his car. He noticed the same glassy eyes, slurred speech, and odor of alcohol that Officer Bryan had observed. After refusing to submit to an alcosensor test, defendant was arrested and transported to the Hyde County Sheriff's Office, where he eventually agreed to be tested by an Intoxilyzer 5000

machine. The test reported a breath alcohol concentration of 0.13 grams of alcohol per 210 liters of breath.

At the close of the State's evidence, defendant's motion to dismiss the charge for a constitutional violation and for insufficiency of the evidence was denied. Defendant offered no evidence, and the jury subsequently found him guilty of driving while impaired.

---

Defendant argues on appeal that the trial court erred in (1) denying his motion to dismiss for insufficiency of the evidence; (2) denying his motion to dismiss on the grounds that N.C. Gen. Stat. § 20-138.1 and its associated statutory scheme fail to give fair notice of acts to be prohibited; and (3) submitting a redacted version of the statutory definition of the term "vehicle" as part of the court's instructions to the jury. For the reasons which follow, we find no error.

[1] Defendant first argues the trial court erred in denying his motion to dismiss the DWI charge for insufficiency of the evidence. Upon a motion to dismiss criminal charges for insufficiency of the evidence, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The evidence is considered in the light most favorable to the State, and the State is entitled to every reasonable inference arising from it. *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. The trial court does not weigh the evidence or determine witnesses' credibility. *Id.* "It is concerned 'only with the sufficiency of the evidence to carry the case to the jury.'" *State v. Thaggard*, 168 N.C. App. 263, 281, 608 S.E.2d 774, 786 (2005) (quoting *State v. Lowery*, 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983)).

Defendant contends there was insufficient evidence of a violation of N.C. Gen. Stat. § 20-138.1 because the motorized scooter he was riding cannot be considered a "vehicle" within the meaning of the statute. We disagree. Under N.C. Gen. Stat. § 20-138.1(a), "[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State . . . [w]hile under the influence of an impairing substance . . . or . . . [a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or

more." N.C. Gen. Stat. § 20-138.1(a)(1) (2003). By its express terms, the statute does not apply to horses, bicycles, or lawnmowers. *Id.* § 20-138.1(e). The statutory provision encompasses all other "vehicles" as defined in N.C. Gen. Stat. § 20-4.01(49) (2003):

> Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon fixed rails or tracks; provided, that for the purposes of this Chapter bicycles shall be deemed vehicles and every rider of a bicycle upon a highway shall be subject to the provisions of this Chapter applicable to the driver of a vehicle except those which by their nature can have no application. This term shall not include a device which is designed for and intended to be used as a means of transportation for a person with a mobility impairment, or who uses the device for mobility enhancement, is suitable for use both inside and outside a building, including on sidewalks, and is limited by design to 15 miles per hour when the device is being operated by a person with a mobility impairment, or who uses the device for mobility enhancement. This term shall not include an electric personal assistive mobility device as defined in G.S. 20-4.01(7a).

*Id.* § 20-4.01(49).

"Statutory interpretation properly begins with an examination of the plain words of the statute." *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). If the language of a statute is clear, then the Court must implement the statute according to the plain meaning of its terms. *Id.*

In the instant case, defendant was riding a motorized scooter with two wheels arranged in tandem, and the exclusionary provisions for horses, bicycles, and lawnmowers under N.C. Gen. Stat. § 20-138.1(e) have no application. Defendant's scooter does meet the definition of a "device in, upon, or by which any person or property is or may be transported or drawn upon a highway" under N.C. Gen. Stat. § 20-4.01(49). However, the scooter does not fall into either of that statute's two exceptions. First, "vehicle" does not include devices "designed for and intended to be used as a means of transportation for a person with a mobility impairment, or who uses the device for mobility enhancement." N.C. Gen. Stat. § 20-4.01(49) (2003). Defendant neither argued nor relied upon the theory at trial that he suffered from a mobility impairment. On the contrary, the evidence tended to show defendant was a healthy twenty-five-year-old

man riding the scooter for recreational purposes on a holiday weekend at a popular coastal destination.

Defendant, nonetheless, argues that "mobility enhancement" should be construed broadly in light of the dearth of legal precedent concerning the definition of that term. We reject this construction for two reasons. First, although "mobility enhancement" is not specifically defined in the statute, its placement within the sentence discussing "mobility impairment" leads us to conclude that the two terms are closely related and contravenes ascribing the broad definition urged by defendant. Indeed, there is no evidence that defendant was using the scooter other than for strictly recreational purposes. Second, the exception for devices being used for "mobility enhancement" was added to the sentence concerning "mobility impairment" in 2001 as part of "An Act to Make Technical Corrections and Conforming Changes to the General Statutes as Recommended by the General Statutes Commission." *See* Act of Dec. 6, 2001, ch. 487, § 51, 2001 N.C. Sess. Laws 2725, 2806 (codified at N.C. Gen. Stat. § 20-4.01(49) (2003)). In a memorandum, the General Statutes Commission explained that "[t]his bill makes corrections of a *technical nature* to various sections of the General Statutes." Memorandum from the Gen. Statutes Comm'n to Sen. Fletcher L. Hartzell & Rep. Bill Culpepper, N.C. Gen. Assembly (Dec. 3, 2001) (on file with the North Carolina Supreme Court Library) (emphasis added). Therefore, adding the term "mobility enhancement" was a technical change that did not substantively expand the existing mobility impairment exception to the term "vehicle."

Secondly, N.C. Gen. Stat. § 20-4.01(49) excludes "electric personal assistive mobility device[s]" from the definition of "vehicle." An "electric personal assistive mobility device" is "[a] self-balancing non-tandem two-wheeled device, designed to transport one person, with a propulsion system that limits the maximum speed of the device to 15 miles per hour or less." *Id.* § 20-4.01(7a). The State notes that the "Segway Human Transporter" is an example of such a device. Here, the trial court noted that defendant's scooter was not self-balancing. Furthermore, the wheels on the scooter were arranged one behind the other, or in tandem, thus foreclosing the possibility that it may be considered an "electric personal assistive mobility device."

Since defendant's scooter falls within the legislature's definition of "vehicle" in N.C. Gen. Stat. § 20-4.01(49) and does not meet the requirements of any of the exceptions to that definition, we conclude

that it is a "vehicle" for purposes of N.C. Gen. Stat. § 20-138.1(a)(1). Defendant does not argue there was insufficient evidence of any other element of impaired driving. The evidence at trial showed that his breath alcohol concentration following arrest was 0.13, well over the 0.08 limit found in N.C. Gen. Stat. § 20-138.1(a)(2). Accordingly, there was sufficient evidence to carry the case to the jury on the charge of impaired driving.

[2] Defendant next argues that the trial court erred in denying his motion to dismiss on the grounds that, as applied to this case, N.C. Gen. Stat. § 20-138.1 and its associated statutory scheme fail to give fair notice of the acts they prohibit. The United States and North Carolina Constitutions require that the terms of a criminal statute must be sufficiently clear and explicit to inform those subject to it what acts it is their duty to avoid or what conduct will render them liable to its penalties. Individuals may not be required to speculate as to the meaning of a penal statute at the peril of their life, liberty, or property. *Surplus Store, Inc. v. Hunter*, 257 N.C. 206, 211, 125 S.E.2d 764, 768 (1962); *see also State v. Sparrow*, 276 N.C. 499, 509, 173 S.E.2d 897, 904 (1970); *In re Burrus*, 275 N.C. 517, 531, 169 S.E.2d 879, 888 (1969), *aff'd*, 403 U.S. 528, 29 L. Ed. 2d 647 (1971). A statute violates these principles when its terms cannot be understood and complied with by an average person exercising common sense. *United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 578, 37 L. Ed. 2d 796, 816 (1973); *Broadrick v. Oklahoma*, 413 U.S. 601, 608, 37 L. Ed. 2d 830, 837 (1973); *State v. Lowry* and *State v. Mallory*, 263 N.C. 536, 539, 139 S.E.2d 870, 873 (1965), *cert. denied* and *appeal dismissed sub nom. Mallory v. North Carolina*, 382 U.S. 22, 15 L. Ed. 2d 16 (1965); *State v. Hales*, 256 N.C. 27, 33, 122 S.E.2d 768, 772 (1961).

Based on the language and purpose of N.C. Gen. Stat. § 20-138.1 to protect the lives of motorists and pedestrians, *see State v. Stewardson*, 32 N.C. App. 344, 350, 232 S.E.2d 308, 312 (1977), *cert. denied*, 292 N.C. 643, 235 S.E.2d 64 (1977), an average person exercising common sense should have known that operating a motorized scooter while impaired would subject him to the penalties of the statute. As discussed above, both N.C. Gen. Stat. § 20-138.1 and 20-4.01(49) are broadly applicable to "any vehicle" with only narrow, explicit exceptions. The statutory scheme, accordingly, makes clear that a person riding something other than one of the enumerated exceptions to the term vehicle is engaged in conduct prohibited by N.C. Gen. Stat. § 20-138.1.

This conclusion also follows from the purpose of N.C. Gen. Stat. § 20-138.1, which is to protect human life on the roadways of this State. By imposing criminal penalties for operating a vehicle while under the influence of an impairing substance, the statute aims to prevent the very behavior defendant was engaged in on 24 May 2003. He was operating a self-propelled vehicle traveling erratically down a busy highway at a speed of at least ten miles per hour. Testimony at trial indicated there were approximately one hundred pedestrians in the immediate area, along with automobile traffic. Defendant's behavior subjected these pedestrians and motorists to a high degree of danger. Defendant had fair notice of the acts prohibited by our DWI laws, and his due process rights were not violated by its application.

Defendant asserts that, in light of the express exception for bicycles and electric personal assistive mobility devices, an average person might infer that small, lightweight, low-speed devices such as scooters would also fall outside the reach of the statute. Although we are wary of requiring the legislature to be overly specific in drafting exceptions to the statute, see In re Banks, 295 N.C. 236, 240, 244 S.E.2d 386, 389 (1978) (noting that "the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions"), we believe the decision as to whether to exclude scooters is best left in the hands of the General Assembly. In the case of N.C. Gen. Stat. § 20-138.1 and its associated scheme, the legislature has made an effort over time to define a small number of very specific exceptions. Rather than provide a general exception for all small, lightweight, and low-speed devices, the legislature has specifically excepted, in relevant part, bicycles, electric personal assistive mobility devices, and devices used by individuals with a mobility impairment or for mobility enhancement. See N.C. Gen. Stat. §§ 20-4.01(49), 138.1(e) (2003). Following the principle of expressio unius est exclusio alterius ("to express or include one thing implies the exclusion of the other," Black's Law Dictionary 620 (8th ed. 2004); see also State v. Jones, 359 N.C. 832, 835, 616 S.E.2d 496, 497 (2005)), the absence of a motorized scooter from the list of exceptions is indicative of the General Assembly's intent to include such devices in the statutory definition of vehicle. Here, in a situation in which the legislature has allowed a limited number of very specific exceptions to a statute, it would be inappropriate for this Court to create another. The legislature may choose to make an exception for electric scooters such as the one in this case. Until that time, we apply the statutory scheme as it has been enacted.

**[3]** Finally, defendant assigns error to the trial court's submission of a redacted version of the definition of the term "vehicle" found in N.C. Gen. Stat. § 20-4.01(49) as part of the court's charge to the jury. Over defendant's objection, the trial court instructed the jury that "[f]or the purposes of this charge, a vehicle is defined as every device in, upon, or by which any person is or may be transported upon a highway, excepting devices moved by human power or used exclusively upon fixed rails or tracks." This is essentially the first clause of N.C. Gen. Stat. § 20-4.01(49), omitting the exception for devices

> designed for and intended to be used as a means of transportation for a person with a mobility impairment, or who uses the device for mobility enhancement, is suitable for use both inside and outside a building, including on sidewalks, and is limited by design to 15 miles per hour when the device is being operated by a person with a mobility impairment, or who uses the device for mobility enhancement.

The definition given by the trial judge also omits the exception for "electric personal assistive mobility devices."

On appeal, this Court reviews jury instructions contextually and in their entirety. *Jones v. Development Co.*, 16 N.C. App. 80, 86, 191 S.E.2d 435, 439-40, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972). If the instructions "present[] the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed," then they will be held to be sufficient. *Id.* at 86-87, 191 S.E.2d at 440. The appealing party must demonstrate that the error in the instructions was likely to mislead the jury. *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988).

In this case, we do not believe the omission of this material was likely to mislead the jury. As discussed above, there was no evidence presented at trial that defendant suffered from a mobility impairment or was using the scooter for mobility enhancement. Moreover, defendant's scooter does not fall within the definition of "electric personal assistive mobility device" found in N.C. Gen. Stat. § 20-4.01(7a). These exceptions were irrelevant to defendant's case, and there was no evidence to support their inclusion in the charge to the jury. Since the redacted portions of the statute were not applicable to the case, there is no reason to believe the jury was misled by their omission.

No error.

Judges McGEE and ELMORE concur.