STATE OF NORTH CAROLINA v. JAMES EDWARD SIMMONS, V

No. COA09-862

(Filed 20 July 2010)

## 1. Criminal Law— prosecutor's closing argument—prejudicial error

The trial court erred in a driving while impaired case in allowing the State in its closing argument, over defendant's objection, to compare the case *sub judice* to a previous Pitt County case, *State v. Narron*. The prosecutor impermissibly injected his personal experiences from his prosecution of John Narron and the facts of *Narron*, in violation of N.C.G.S. § 15A-1230(a), and improperly read the facts contained in the published opinion together with the result to imply that the jury should return a favorable verdict for his client. Furthermore, the error so prejudiced the case against defendant that he was entitled to a new trial on the charge.

## 2. Jury— selection—challenge for cause—no error

The trial court did not err in a driving while impaired and possession of an open container of alcohol in the passenger area of a motor vehicle case by allowing the State's challenge for cause during jury selection while denying defendant's challenge for cause. The trial court must assess independently each potential juror's ability to perform his duties as a juror and by granting one party's challenge for cause, the trial court did not become obligated to grant the opposing party the same.

## 3. Criminal Law— defendant's closing argument—right to make final argument denied—argument dismissed

Defendant's argument that he was denied his right to make the final closing argument to the jury based on the trial court's

STATE v. SIMMONS

[205 N.C. App. 509 (2010)]

requirement that defense counsel provide the State a copy of the PowerPoint presentation he intended to use during his closing argument in advance of his closing argument was dismissed. The record was devoid of any conclusive evidence that the trial court ordered defense counsel to provide a copy of his presentation to the State.

**4. Search and Seizure— investigatory stop—reasonable suspicion—driving while impaired—motion to suppress properly denied**

The trial court did not err in a driving while impaired case by denying defendant's motion to suppress evidence seized as a result of an investigatory traffic stop. The police officer had reasonable suspicion to stop defendant based on the officer's observance of defendant weaving within his lane and across other lanes of travel.

**5. Search and Seizure— probable cause—possession of an open container of alcohol—motion to suppress properly denied**

The trial court did not err in a driving while impaired case by denying defendant's motion to suppress evidence seized in connection with his arrest. The police officer's discovery of a half-full container of alcohol on the passenger's seat of defendant's vehicle was sufficient probable cause to arrest defendant for violation of N.C.G.S. § 20-138.7.

**6. Motor Vehicles— driving while impaired—chemical analysis of breath—Intoxilyzer 5000—preventative maintenance properly performed—motion to suppress properly denied**

The trial court did not err in a driving while impaired case in denying defendant's motion to suppress the results of a chemical analysis performed on defendant's breath with the Intoxilyzer 5000. Contrary to defendant's argument, preventative maintenance had been performed within the time limits prescribed by the Department of Health and Human Services.

**7. Penalties, Fines, and Forfeitures— possession of open alcoholic beverage container in automobile—fine excessive**

The trial court erred in fining defendant $500 for possession of an open alcoholic beverage container in the passenger area of a vehicle while on the highway because, pursuant to N.C.G.S. §§ 14-3.1, 15A-1361, and 20-138.7(a1) and (e), the sanction for this offense is a fine not in excess of $100.

STATE v. SIMMONS

[205 N.C. App. 509 (2010)]

Appeal by Defendant from judgments entered 17 December 2008 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 9 December 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel, for the State.*

*The Robinson Law Firm, P.A., by Leslie S. Robinson, for Defendant.*

STEPHENS, Judge.

## I. Procedural History

### A. District Court

On 28 December 2006, Defendant James Edward Simmons, V was arrested and charged with driving while impaired ("DWI"), in violation of N.C. Gen. Stat. § 20-138.1, and possession of an open container of alcohol in the passenger area of a motor vehicle, in violation of N.C. Gen. Stat. § 20-138.7. On 13 December 2007, Defendant was found guilty of both charges. The district court imposed court costs for the open container offense, and sentenced Defendant to a maximum of 45 days in the custody of the Pitt County Sheriff for the DWI offense. The jail sentence was suspended, and Defendant was placed on 12 months unsupervised probation. Defendant gave notice of appeal in open court.

### B. Superior Court

On 28 April 2008, Defendant filed a Motion to Suppress Breath Results and a Motion to Suppress Evidence obtained as a result of the stop of his motor vehicle and his subsequent arrest for the DWI and open container violations. On 10 July 2008, Defendant filed a second Motion to Suppress Evidence.

Defendant's case came on for trial before a jury during the 15 December 2008 criminal session of Pitt County Superior Court, the Honorable W. Russell Duke, Jr. presiding. Judge Duke summarily denied Defendant's pre-trial motions to suppress during the course of the trial proceedings. Defendant's motions to dismiss at the close of the State's evidence and at the close of all the evidence were also denied. On 17 December 2008, the jury returned verdicts finding Defendant guilty of DWI and an open container offense, and the trial court entered judgment on the verdicts. For the DWI offense, Defendant was sentenced to a 60-day prison term. The prison term

was suspended, and Defendant was placed on 12 months supervised probation. As conditions of Defendant's probation, Defendant was required to serve seven days in the Pitt County Detention Center, ordered to pay court costs and a fine, and prohibited from driving a vehicle unless it was equipped with an interlock device. For the open container offense, Defendant was ordered to pay court costs and a fine.

Defendant appeals.

## II. *Factual Background and Evidence*

On 28 December 2006, Trooper Michael Potter of the North Carolina Highway Patrol was on duty at approximately 9:40 p.m. on N.C. 11, a four-lane highway with two lanes of travel in each direction, separated by a median, near Bethel, North Carolina. Trooper Potter was traveling north when he noticed a pickup truck in front of him also traveling north in the left lane. He observed the truck weaving so he increased his speed to catch up to the truck. Trooper Potter testified that he observed Defendant's truck

travel left in the left lane and he crossed the center line. He traveled back right again to the middle of the left lane. Then he traveled back left again and, and—to the line, which is the—it's a yellow line in that location. And he traveled back over the line. Then he traveled back all the way across the dotted line. He did not signal the vehicle. He then traveled right, crossing the white line, which line on that side is white, and then he traveled back to the center of the right lane.

At that time, Trooper Potter activated his blue lights and pulled the truck over to the side of the road.

Trooper Potter walked to the driver's side of the truck. Defendant rolled down his window and produced his driver's license. Trooper Potter detected a strong odor of alcohol emanating from Defendant's breath, and asked Defendant if he had been drinking. Defendant told Trooper Potter that he had had "a couple of beers." Potter asked Defendant to step out of his truck, whereupon Potter observed several beer bottles in the passenger area, one of which appeared to be half full.

Potter did not observe any problems with how Defendant exited his truck or how he walked to the patrol vehicle. Potter did observe, however, that (1) Defendant's eyes were red and glassy, (2)

**STATE v. SIMMONS**

[205 N.C. App. 509 (2010)]

Defendant had an odor of alcohol emanating from his breath, and (3) Defendant's speech was slightly slurred. Once Defendant was inside Potter's patrol car, Potter administered two alco-sensor tests, both of which were positive for alcohol.

Potter placed Defendant under arrest for driving while impaired and transported Defendant to the Pitt County Detention Center to conduct a chemical analysis of his breath. Potter read Defendant his chemical analysis rights at 10:03 p.m. and administered two separate breath-alcohol tests using the Intoxilyzer 5000 at 10:25 p.m. and 10:26 p.m. The tests revealed an alcohol concentration of .11. Potter then asked Defendant to perform four field sobriety tests. Defendant satisfactorily performed all four tests. Potter then asked Defendant the questions on the driving while impaired report, and Defendant admitted to having consumed four beers between 7:30 p.m. and 8:45 p.m.

Defendant did not offer any evidence.

### III. Discussion

### A. State's Closing Argument

[1] Defendant contends that the trial court erred in allowing the State in its closing argument, over Defendant's objection, to compare the case *sub judice* to a previous Pitt County case, *State v. Narron*. For the reasons which follow, we conclude that the trial court erred and that such error so prejudiced the case against Defendant that he is entitled to a new trial on the DWI charge.[1]

"[T]he scope of jury arguments is left largely to the control and discretion of the trial court." *State v. Taylor*, 362 N.C. 514, 545, 669 S.E.2d 239, 265 (2008) (citations and quotation marks omitted), *cert. denied*, —— U.S. ——, 175 L. Ed. 2d 84 (2009). On appeal, "[t]he standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). The trial court abuses its discretion when its ruling "could not have been the result of a reasoned decision." *State v. Burrus*, 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996). Moreover, even if the trial court abused its discretion in failing to sustain an objection to an improper closing argument, "[a] prosecutor's improper remark during closing arguments does not justify a new trial unless it is so grave that it prejudiced the result of the trial." *State v. Rashidi*, 172 N.C. App. 628, 642, 617 S.E.2d 68, 77-78 (cita-

---

1. The prosecutor's argument only pertained to Defendant's DWI charge.

tions and quotation marks omitted), *aff'd per curiam*, 360 N.C. 166, 622 S.E.2d 493 (2005).

"Trial counsel is allowed wide latitude in argument to the jury and may argue all of the evidence which has been presented as well as reasonable inferences which arise therefrom." *State v. Guevara*, 349 N.C. 243, 257, 506 S.E.2d 711, 721 (1998), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999). Counsel may not, however, "inject his personal experiences . . . or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice." N.C. Gen. Stat. § 15A-1230(a) (2007). Furthermore, while N.C. Gen. Stat. § 7A-97 grants counsel the right to argue the law to the jury, which includes the authority to read and comment on reported cases and statutes, *State v. Gardner*, 316 N.C. 605, 611, 342 S.E.2d 872, 876 (1986),

> [i]t is not permissible argument for counsel to read, or otherwise state, the facts of another case, together with the decision therein, as premises leading to the conclusion that the jury should return a verdict favorable to his client in the case on trial. That is, counsel may not properly argue: The facts in the reported case were thus and so; in that case the decision was that there was no negligence (or was negligence); the facts in the present case are the same or stronger; therefore, the verdict in this case should be the same as the decision there.

*Wilcox v. Glover Motors, Inc.*, 269 N.C. 473, 479, 153 S.E.2d 76, 81 (1967); *see also State v. Braxton*, 352 N.C. 158, 222, 531 S.E.2d 428, 465 (2000) ("The facts of . . . other cases are not pertinent to any evidence presented in this case and are, thus, improper for jury consideration."), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001).

In this case, the prosecutor concluded his closing argument by stating the following:

> [PROSECUTOR]: . . . I'm going to close by reading a case to you. This is a case that I tried in Superior Court probably six months ago . . . .
>
> In that case [the defendant] was a John Narron. He was a medical student here at ECU. He was driving around in the downtown area—
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.

STATE v. SIMMONS

[205 N.C. App. 509 (2010)]

[PROSECUTOR]: —and he was stopped. And in that case his alcohol concentration was .08 or greater. A lot of the same factors in that, you know, there wasn't a whole, whole lot of evidence of impairment. I mean, he did a lot—

[DEFENSE COUNSEL]: Objection. Approach the bench, Judge.

THE COURT: Overruled.

[PROSECUTOR]: In that case it was not a whole, whole lot of evidence that he was under the influence of an impaired [sic] substance. It was an alcohol concentration of .08, right on the legal limit, and that defendant, just as this defendant, did really well on a lot of different field sobriety tests that were administered.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled. [Defense Counsel], given his argument, you were told that this was what he was going to argue. He's staying within the bounds of that decision. He's correctly stating it thus far.

The objection's overruled.

[PROSECUTOR]: And in that case, and, again, a Pitt County jury just as yourself found that defendant guilty with a .08.

The prosecutor then quoted passages from *State v. Narron*, 193 N.C. App. 76, 666 S.E.2d 860 (2008), *disc. review denied*, 363 N.C. 135, 674 S.E.2d 140, *cert. denied*, —— U.S. ——, 175 L. Ed. 2d 26 (2009), in which this Court concluded that there had been no reversible error in John Narron's trial.

That the prosecutor "inject[ed] his personal experiences" from his prosecution of John Narron and that the facts of *Narron* are "matters outside the record" upon which the prosecutor could not base his argument, each in violation of N.C. Gen. Stat. § 15A-1230(a), cannot be reasonably assailed. Furthermore, the facts in *Narron* "are not pertinent to any evidence presented in this case and [were], thus, improper for jury consideration." *Braxton*, 352 N.C. at 222, 531 S.E.2d at 465. Moreover, it is unquestionable that the prosecutor "read the facts contained in a published opinion together with the result to imply that the jury in his case should return a favorable verdict for his client." *State v. Anthony*, 354 N.C. 372, 430, 555 S.E.2d 557, 594, *cert. denied*, 354 N.C. 575, 559 S.E.2d 184 (2001). This is undeniably improper. Accordingly, the trial court's denial of defense counsel's

objection to the argument "could not have been the result of a reasoned decision[,]" *Burrus*, 344 N.C. at 90, 472 S.E.2d at 875, and was an abuse of discretion.

The State argues, however, that the trial court did not err in allowing the prosecutor's argument because defense counsel did not object when the prosecutor informed defense counsel and the trial court prior to closing arguments, "I do plan to cite one case, which is [*State v. Narron*]. . . . I do plan on reading some language from that case, Judge, and then I would just argue as to the basic facts in my closing argument." We need not address whether the failure to object to notice of an impermissible closing statement waives any later argument that the statement was improper as the notice given by the prosecutor here implies that the prosecutor planned to cite the law as stated in *Narron*, and apply that law to the basic facts in this case, which would have been permissible.

Having determined that the prosecutor's remarks during his closing argument were improper, we further conclude that the remarks prejudiced the result of the trial.

The driving while impaired statute, N.C. Gen. Stat. § 20-138.1, provides:

A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration . . . .

N.C. Gen. Stat. § 20-138.1(a). Under N.C. Gen. Stat. § 20-138.1(a)(2), "the meaning of the phrase 'shall be deemed sufficient evidence to prove' is that properly admitted results of a chemical analysis 'must be treated as *prima facie* evidence of' a defendant's alcohol concentration." *Narron*, 193 N.C. App. at 83, 666 S.E.2d at 865.

In this case, the results of the chemical analysis admitted into evidence were " '*prima facie* evidence' " that Defendant's alcohol concentration was .11. *Id.* However, the results did not create a "legal presumption[,]" *id.* at 84, 666 S.E.2d at 865, that Defendant "ha[d], at any relevant time after the driving, an alcohol concentration of 0.08

or more." N.C. Gen. Stat. § 20-138.1(a)(2). A true presumption exists where "proof of a basic fact permits or requires the fact finder to find a different, elemental, fact." *Narron*, 193 N.C. App. at 84, 666 S.E.2d at 865. N.C. Gen. Stat. § 20-138.1 "does not state that 'results of a chemical analysis shall be deemed sufficient evidence to prove' e.g., a person's degree of intoxication, or his operation of a vehicle on a state highway." *Id.* at 84, 666 S.E.2d at 866. Instead,

> the statute simply authorizes the jury to find that the report is what it purports to be—the results of a chemical analysis showing the defendant's alcohol concentration. This is the definition of *prima facie* evidence of an element of any criminal offense or civil cause of action—that the jury may find it adequate proof of a fact at issue.

*Id.* Accordingly, although the results of the chemical analyses in this case were sufficient evidence from which the jury could have found that Defendant had an alcohol concentration of 0.11 and, thus, could have convicted Defendant of DWI under N.C. Gen. Stat. § 20-138.1(a)(2),[2] the results did not *compel* the jury to do so.

However, given the similarity of the *Narron* facts recited by the prosecutor to the facts of this case, the guilty verdict returned by the jury in *Narron*, and the prosecutor's first-hand knowledge of both cases, there is a substantial likelihood that the prosecutor's improper argument led the jury to believe that it *was compelled* to return a verdict of guilty in this case based on the results of the chemical analysis.[3] Accordingly, we conclude that the erroneous admission of the prosecutor's improper closing argument was "so grave that it prejudiced the result of the trial." *Rashidi*, 172 N.C. App. at 642, 617 S.E.2d at 77-78 (citations and quotation marks omitted). For this error, Defendant is entitled to a new trial on the charge of DWI.

### B.  *Challenge for Cause*

[2]  Defendant next argues that he is entitled to a new trial on both charges because the trial court erred during jury selection in allowing the State's challenge for cause while denying Defendant's challenge for cause.

---

2. Whether there was sufficient evidence from which the jury could also find that Defendant drove "any vehicle upon any highway, any street, or any public vehicular area within this State . . . [,]" N.C. Gen. Stat. § 20-138.1(a), is not an issue on appeal.

3. The State, in the very argument to the jury that we find improper, conceded that there was minimal evidence to convict Defendant on the basis that he was "under the influence" of alcohol pursuant to N.C. Gen. Stat. § 20-138.1(a)(1).

We review a trial court's ruling on a challenge for cause for abuse of discretion. A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision. In our review, we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record.

*State v. Lasiter*, 361 N.C. 299, 301-02, 643 S.E.2d 909, 911 (2007) (internal citations and quotation marks omitted).

N.C. Gen. Stat. § 15A-1212 sets forth nine bases for a challenge for cause. A trial judge "is not required to remove from the panel every potential juror" whose initial *voir dire* testimony supports a challenge for cause pursuant to N.C. Gen. Stat. § 15A-1212. *State v. Cummings*, 326 N.C. 298, 308, 389 S.E.2d 66, 71 (1990). Once a challenge for cause has been made based upon the juror's *voir dire*, it is the trial judge's responsibility to determine whether, in his or her opinion, the juror would be able to exercise properly his duties as a juror. *State v. Black*, 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991). The trial judge has the opportunity to hear the potential juror's responses and to observe the demeanor of the juror during *voir dire* examination and, thus, is in the superior position to determine what weight and credibility should be given to the potential juror's *voir dire* responses. If, in the trial judge's opinion, the prospective juror "credibly maintains" that he will be able to set aside any bias he may have and render a fair and impartial verdict based on the evidence presented at trial, "then it is not error for the court to deny defendant's motion to remove [the] juror for cause." *Cummings*, 326 N.C. at 308, 389 S.E.2d at 71. "The question the trial court must answer in determining whether to excuse a prospective juror for cause is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *State v. Cummings,* 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (citation and quotation marks omitted).

In this case, Justin Young was seated as juror number two during jury *voir dire*. Mr. Young stated that he had a pending DWI charge against him in Pitt County and admitted to consuming alcohol at least three times a week. Mr. Young indicated that despite the pending charge against him, he could be fair and impartial. The State challenged Mr. Young for cause and, over Defendant's objection, the trial court allowed the State's challenge and excused Mr. Young.

Brian Richardson was seated as juror number nine during jury *voir dire*. Mr. Richardson stated that he was employed with the East Carolina University Police Department. In his capacity as a traffic officer, he has issued many traffic citations, worked closely with the District Attorney's office in the prosecution of those cases and other traffic cases, including driving while impaired cases, and had never testified on behalf of a defendant. Mr. Richardson indicated that despite his law enforcement experience, he could be fair and impartial. Defendant challenged Mr. Richardson for cause, but the trial court denied Defendant's challenge and Mr. Richardson remained on the jury.

Defendant exhausted his preemptive challenges and then moved the trial court to reconsider its ruling to allow the State's challenge to Mr. Young while denying Defendant's challenge to Mr. Richardson. The trial court denied Defendant's motion. Thereafter, Defendant requested one additional preemptive challenge to remove Mr. Richardson. The trial court denied Defendant's request.

Citing *State v. Lee*, 292 N.C. 617, 234 S.E.2d 574 (1977), Defendant argues that because of Mr. Richardson's employment as a law enforcement officer, "it is difficult to accept, as the court noted in *Lee*, that Officer Richardson could be fair and impartial because it runs counter to human nature." In *Lee*, the defendant was on trial in Wilson County Superior Court for first-degree murder. During jury selection, the defendant's challenge for cause of juror Frances Norvell was denied by the trial court.

> The *voir dire* examination of prospective juror Norvell disclosed that her husband was a police officer employed by the City of Wilson. He had been a police officer for a period of ten or eleven years and she had been married to him during that entire period. Mrs. Norvell knew most of the Wilson police officers and was acquainted with police officer Johnny Moore, the chief investigating officer in this case who testified in corroboration of the State's principal witness, Dennis Barnes. She was also acquainted with Captain Tom Smith and Captain Hayes, the Chief of Police of Wilson. Mrs. Norvell and her husband had visited in Captain Hayes' home and Mrs. Hayes had visited in their home. She was friendly with numerous members of the Wilson Police Department. Her brother-in-law was a detective on the Wilmington police force. Prospective juror Norvell stated that she was a member of the Wilson Police Auxiliary and was acquainted with Officer Johnny Moore's wife who was also a member of that orga-

nization. The Auxiliary occasionally gave parties which were attended by police officers and their spouses. Her husband on rare occasions discussed with her the cases in which he was involved and they had discussed his view on capital punishment.

*Id.* at 619-20, 234 S.E.2d at 576. Additionally, the following exchange occurred between defense counsel and Mrs. Norvell:

> Q. I ask you, Mrs. Norvell, since you know Mr. Moore and Tom Smith and your husband is on the Wilson Police Department, if they should testify in this case, would you tend to put more weight on what they said about the case than some witness you had never seen before?
>
> A. I don't think so.
>
> Q. But, you are not sure about that?
>
> A. No, sir.
>
> Q. It is possible that you might believe what they said more than somebody you didn't know?
>
> A. I would have a tendency to.

*Id.* at 620, 234 S.E.2d at 576.

In holding that the trial judge erred by refusing to grant the defendant's challenge for cause as to juror Norvell, this Court explained that, "[u]nder the particular circumstances of this case, we do not believe that juror Norvell could qualify as a disinterested and impartial juror. However, we hasten to add that a juror's close relationship with a police officer, standing alone, is not grounds for a challenge for cause." *Id.* at 625, 234 S.E.2d at 579.

The facts in this case are easily distinguishable from the facts in *Lee*. Unlike in *Lee*, the record before us does not indicate that Mr. Richardson had any personal relationship with any law enforcement officers involved in this case. Furthermore, unlike in *Lee*, the record does not disclose that Mr. Richardson indicated he might not be able to be a fair and impartial juror. Indeed, Defendant argues that Mr. Richardson should have been excused solely on the grounds of his close relationship with law enforcement—a basis which this Court explicitly rejected in *Lee*.

Defendant further argues that in order to "hold the scales evenly[,]" the trial court should have excused Mr. Richardson be-

cause the trial court excused Mr. Young. However, the trial court must assess independently each potential juror's ability to perform his duties as a juror. By granting one party's challenge for cause, the trial court does not become obligated to grant the opposing party the same.

Accordingly, we conclude that the trial court did not abuse its discretion in allowing the State's challenge for cause of juror number two while denying Defendant's challenge for cause of juror number nine. The assignment of error upon which this argument is based is overruled.

### C. Defendant's Closing Argument

[3] Defendant also contends that the trial court erred in requiring defense counsel to provide the State a copy of the Power Point presentation he intended to use during his closing argument in advance of his closing argument. Defendant argues that by doing so, the trial court denied Defendant his right to make the final closing argument to the jury and, thus, Defendant is entitled to a new trial on both charges.

Rule 10 of the General Rules of Practice for the Superior and District Courts confers upon the defendant in a criminal trial the right to both open and close the final arguments to the jury, provided that "no evidence is introduced by the defendant[.]" N.C. Super. and Dist. Ct. R. 10 (2007). "This right has been deemed to be critically important and the improper deprivation of this right entitles a defendant to a new trial." *State v. English*, 194 N.C. App. 314, 317, 669 S.E.2d 869, 871 (2008).

"In appeals from the trial division . . . review is solely upon the record on appeal, the verbatim transcript of proceedings . . . and any items filed with the record on appeal pursuant to Rule 9(c) and 9(d)." N.C. R. App. P. 9(a). "[I]t is the responsibility of each party to ensure the record on appeal clearly sets forth evidence favorable to that party's position." *Ronald G. Hinson Elec., Inc. v. Union County Bd. of Educ.*, 125 N.C. App. 373, 375, 481 S.E.2d 326, 328 (1997); *see also State v. Cummings*, 346 N.C. 291, 322, 488 S.E.2d 550, 568 (1997) ("The defendant has the responsibility to provide a complete record."), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998).

In this case, after the close of all the evidence, the following exchange took place between the trial court and defense counsel regarding defense counsel's closing argument:

STATE v. SIMMONS

[205 N.C. App. 509 (2010)]

THE COURT: All right. You're going to give a slide show?

[DEFENSE COUNSEL]: Yes, Judge, that's correct, and Judge, I have a printout for the Court and also for Mr. DA.

Judge, [Defendant] would lodge his objection. In essence, one of the benefits defendant has by not offering evidence is being able to argue last without the State's having any purview of what the defendant says, and by giving him this handout, it, in essence, eliminates that defendant's right to give the last argument by not letting the DA know what he's going to argue.

So I do have copies, Judge, for the Court. May I approach, Your Honor?

THE COURT: Well, as was talked about yesterday afternoon when you were setting up your trial—slide show, the Court told you that the Court would require a copy of the slide show to see that it is within the evidence presented in this case.

[DEFENSE COUNSEL]: Yes, sir, Judge, and the way I view this, my intent of the slide show is just a more modern version of simply a flip chart or writing on a chalk board, which I feel is no different. It's just a modern version of doing the same thing. And certainly Mr. DA. . . . can lodge objections as we go.

In any event, Judge, I've provided the Court with everything. . . .

Although the record indicates that the trial court required defense counsel to provide the court with a copy of defense counsel's slide show in advance of his closing argument, the record is devoid of any conclusive evidence[4] that the trial court ordered defense counsel to provide a copy of his presentation to the State. It is therefore impossible for this Court to conclude that the trial court erred in requiring defense counsel to provide the State a copy of his Power Point presentation. Defendant's argument is dismissed.

### D. Motions to Suppress

Although we grant Defendant a new trial on his DWI charge, we must determine whether the trial court erred in denying Defendant's

---

4. The comments of the court and defense counsel suggest that the contents of defense counsel's intended slide show presentation had been discussed the day before and contained directives which had been given by the court. Those proceedings, however, are not included in the record on appeal and it is therefore unknown to this Court whether the judge ordered defense counsel to provide a copy of his slide show to the prosecutor before closing argument.

motions to suppress such that Defendant's convictions should be vacated. For the following reasons, we conclude that the trial court did not err.

## 1. Reasonable Suspicion

[4] Defendant argues that the trial court erred in denying his motion to suppress evidence because Trooper Potter lacked reasonable suspicion for the investigatory stop of Defendant's vehicle.

Here, the trial court summarily denied Defendant's motion to suppress. N.C. Gen. Stat. § 15A-977 (2007). Thus, this Court will review the trial court's conclusions of law *de novo*. *State v. Kincaid*, 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001).

"[R]easonable suspicion is the necessary standard for traffic stops[.]" *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008).

> Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. Only some minimal level of objective justification is required. This Court has determined that the reasonable suspicion standard requires that [t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. Moreover, [a] court must consider the totality of the circumstances—the whole picture in determining whether a reasonable suspicion exists.

*State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (internal citations and quotation marks omitted), *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198 (2008).

Trooper Potter stated in the Affidavit and Revocation Report of Charging Officer[5] that Defendant was "weaving in his lane." At trial, Trooper Potter testified as follows:

> I was traveling north and I observed a gray pickup that was traveling north also in the left lane.
>
>     . . . .

---

5. An Affidavit and Revocation Report of Charging Officer is a sworn statement by a law enforcement officer and a chemical analyst containing facts indicating that a person who has refused chemical analysis or who has been charged with an implied-consent offense has met certain conditions and, thus, is subject to having his or her driver's license immediately revoked. N.C. Gen. Stat. § 20-16.5 (2007).

I observed the vehicle travel left in the left lane and he crossed the center line.

He traveled back right again to the middle of the left lane.

Then he traveled back left again and, and—to the line, which is the—it's a yellow line in that location. And he traveled back over the line.

Then he traveled back all the way across the dotted line. He did not signal the vehicle.

He then traveled right, crossing the white line, which line on that side is white, and then he traveled back to the center of the right lane.

At that time I activated my blue lights and pulled the vehicle over to the side of the road.

Trooper Potter was then asked to step down from the witness stand to illustrate his testimony on the chalkboard. Trooper Potter further testified:

I observed [Defendant] run over the line . . . . There's a line and then a small portion of the shoulder there, but he crossed the line.

. . . .

. . . Like I said, he crossed it twice, then moved back into the middle, went for awhile [sic], and then he went all the way across. Did not signal.

Then he went over on that side and ran off the road on that side. Then he went back to the middle of that line.

Defendant first argues that evidence supporting the officer's reasonable suspicion should be limited to his statement in the Affidavit and Revocation Report. However, Defendant cites no authority for this proposition, and our research reveals none.

Citing *State v. Fields*, —— N.C. App. ——, 673 S.E.2d 765, *disc. review denied*, 363 N.C. 376, 679 S.E.2d 390 (2009), Defendant further argues that "[w]eaving in one's lane has never been the basis for an investigatory stop of a defendant's vehicle." In *Fields*, a police detective observed defendant's car swerve to the white line on the right side of the traffic lane in which defendant was traveling on three sep-

arate occasions. Due to defendant's weaving, the detective stopped the car under suspicion that defendant was driving while impaired. This Court held that "defendant's weaving within his lane, standing alone, [was] insufficient to support a reasonable suspicion that defendant was driving under the influence of alcohol." *Id.* at ——, 673 S.E.2d at 769.

Unlike in *Fields*, the evidence before this Court indicates that Defendant was not only weaving within his lane, but was also weaving across and outside the lanes of travel, and at one point actually ran off the road. We conclude that this evidence is sufficient to support a reasonable suspicion that Defendant was driving while impaired. As Trooper Potter's stop of Defendant's vehicle was supported by reasonable suspicion, the trial court did not err in denying Defendant's motion to suppress the breath alcohol concentration results obtained as a result of the stop. Defendant's argument is overruled.

### 2. Probable Cause

[5] Defendant next argues that the trial court erred in denying his motion to suppress evidence obtained in connection with his arrest because the arrest was not supported by probable cause.

"An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense in the officer's presence." N.C. Gen. Stat. § 15A-401(b)(1) (2007).

> Probable cause requires only *a probability or substantial chance* of criminal activity, not an actual showing of such activity. Probable cause exists when there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [person] in believing the accused to be guilty.

*State v. Chadwick*, 149 N.C. App. 200, 202-03, 560 S.E.2d 207, 209 (internal citations and quotation marks omitted), *disc. review denied*, 355 N.C. 752, 565 S.E.2d 672 (2002).

In this case, Trooper Potter observed Defendant weaving within, across, and outside of his lane of travel, and running off the road at one point. When Trooper Potter pulled Defendant's vehicle over to the side of the road and approached Defendant to ask for his license, Trooper Potter "noticed [Defendant] had a strong odor of alcohol that was coming from his breath." Trooper Potter asked

Defendant if he had been drinking, and Defendant stated "that he had had a couple of beers."

When Defendant opened the door to exit his vehicle at Potter's request, Potter observed several beer bottles in the passenger area, one of which was half-full on the passenger's seat. As Defendant walked back to Potter's car to sit in it, Potter observed that Defendant's "eyes were red and glassy[,]" and again noticed that Defendant "had the odor of alcohol coming from his breath." Potter also testified that Defendant's "speech was slightly slurred."

When Defendant sat in Potter's vehicle, Potter administered two alco-sensor tests to Defendant, "one at 9:42 [p.m.] and one at 9:47 [p.m.]." Potter did not testify as to the specific results of the tests, but did testify, over objection, that the tests were positive for alcohol. At that point Potter placed Defendant under arrest.

Defendant asserts that the results of the alco-sensor tests were not admissible and, thus, there was insufficient evidence of probable cause to support Potter's arrest of Defendant. However, we need not address the propriety of the admission of the alco-sensor results here as Potter's discovery of the half-full container of alcohol on the passenger's seat of Defendant's vehicle was sufficient to show "*a probability or substantial chance*[,]" *id.* at 202, 560 S.E.2d at 209 (citation and quotation marks omitted), that Defendant was in possession of an open container of alcohol, in violation of N.C. Gen. Stat. § 20-138.7. Accordingly, Trooper Potter's warrantless arrest of Defendant was supported by probable cause. Defendant's argument is overruled.

### 3. *Motion to Suppress Chemical Test Results*

[6] Defendant next argues that the trial court erred in denying his motion to suppress the results of the chemical analysis performed on Defendant's breath with the Intoxilyzer 5000 as "preventative maintenance was not performed within the time limits prescribed by the Department of Health and Human Services."

Pursuant to N.C. Gen. Stat. § 20-139.1(a), "a person's alcohol concentration or the presence of any other impairing substance in the person's body as shown by a chemical analysis is admissible in evidence." N.C. Gen. Stat. § 20-139.1(a) (2007). "The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration." N.C. Gen. Stat. § 20-139.1(a)(2) (2007). However, the results of a chemical analysis of a defendant's breath are not admissible in evidence if

[t]he defendant demonstrates that, with respect to the instrument used to analyze the defendant's breath, preventive maintenance procedures required by the regulations of the Department of Health and Human Services had not been performed within the time limits prescribed by those regulations.

N.C. Gen. Stat. § 20-139.1(b2)(2) (2007).

According to Department of Health and Human Services ("DHHS") preventive maintenance procedures for the Intoxilyzer 5000 used to test Defendant, preventive maintenance was to be performed at least every four months, and such maintenance was to include verifying that the "alcohol breath simulator solution is being changed every four months or after 125 Alcoholic Breath Simulator tests, whichever occurs first." 10A N.C. Admin. Code 41B.0321(10) (2007). The solution is changed on this time schedule because the solution is only "good for four months or 125 tests[,]" according to Linda Keller, a certified chemical analyst and employee of the Forensic Tests for Alcohol Branch of DHHS.

In this case, preventive maintenance of the simulator, including changing the simulator solution, was performed on 14 July 2006 and then again on 5 December 2006. The chemical analysis of Defendant's breath was conducted on 28 December 2006, 23 days after the most recent preventive maintenance.

Defendant argues that since more than four months had passed between the 14 July and 5 December 2006 maintenance checks, "the simulator solution was not timely changed as mandated by the regulations" and, thus, Defendant's motion to suppress should have been allowed. We disagree.

While Defendant's argument might have had merit if the chemical analysis of Defendant's breath had occurred after 14 November 2006, when four months had passed since the simulator solution had been changed, and before 5 December 2006, when the simulator solution was changed, the chemical analysis of Defendant's breath on 28 December 2006 was performed only 23 days after the simulator solution was changed, well within the four-month window.

Accordingly, as Defendant failed to demonstrate that applicable preventive maintenance procedures had not been performed within the time limits prescribed by DHHS, the results of the chemical analysis were admissible and the trial court did not err in deny-

ing Defendant's motion to suppress.[6] Defendant's argument is without merit.

### E.  Open Container Fine

[7] By Defendant's final argument, Defendant contends the trial court erred in imposing a $500 fine for his open container violation.

We note that although Defendant did not object at sentencing to the amount of fine imposed, an error at sentencing is not considered an error at trial for the purposes of N.C. R. App. P. Rule 10(b)(1). *State v. Canady*, 330 N.C. 398, 410 S.E.2d 875 (1991). Accordingly, we address the merits of Defendant's argument.

The State concedes that, pursuant to N.C. Gen. Stat. §§ 14-3.1, 15A-1361, and 20-138.7(a1) and (e), the sanction for an individual found with an open alcoholic beverage container in the passenger area of a vehicle while on the highway is a fine not in excess of $100. Accordingly, the trial court erred in fining Defendant $500. We thus remand this matter to the trial court for resentencing in accordance with statute.

### E.  Conclusion

For the reasons stated, Defendant is entitled to a new trial on the charge of DWI. We find no error in Defendant's conviction for possession of an open container of alcohol in the passenger area of a motor vehicle, but the matter is remanded to the trial court for resentencing.

NEW TRIAL in part, NO ERROR in part, REMANDED FOR RESENTENCING in part.

Judges McGEE and STEELMAN concur.

---

6. Defendant further argues that the trial court erred in denying his motion to dismiss the DWI charge for insufficient evidence because without the results from the chemical analysis performed on Defendant's breath, there was insufficient evidence of Defendant's impairment. However, in light of our conclusion that the trial court did not err in denying Defendant's motion to suppress the chemical test results, we need not address this assignment of error.