STATE OF NORTH CAROLINA v. JOHN ARTER NARRON, III

No. COA08-129

(Filed 7 October 2008)

**1. Motor Vehicles— driving while impaired—chemical analysis of alcohol concentration—constitutionality of N.C.G.S. § 20-138.1(a)(2)**

The language in N.C.G.S. § 20-138.1(a)(2) that the results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration does not violate a defendant's constitutional right to due process under the Fifth and Fourteenth Amendments in a driving while impaired case because: (1) *Smith*, 312 N.C. 361 (1984), expressly associated the reliability of chemical analysis with the provisions of N.C.G.S. § 20-138.1; (2) statutory criteria must be met under N.C.G.S. §§ 20-138.1 and 139.1 before results of a chemical analysis are admissible in court, and defendant may challenge the admissibility of a chemical analysis of his blood alcohol level; (3) in addition to technical challenges set out in the statutes, a defendant could impeach the admissibility, credibility, or weight of the results of chemical analysis in traditional ways; (4) the longstanding common law rule is that results of a chemical analysis are sufficient evidence to submit the issue of a defendant's alcohol concentration to the factfinder; (5) the challenged provision does not create an evidentiary or factual presumption, but simply states the standard for prima facie evidence of a defendant's alcohol concentration; (6) the language of the amendment is essentially the same as the established common law rule; and (7) the pertinent phrase does not create a legal presumption, and the statute simply authorizes the jury to find that the report is what it purports to be, namely the results of a chemical analysis showing defendant's alcohol concentration.

**2. Motor Vehicles— driving while impaired—request for special instruction denied**

The trial court did not err in an impaired driving case by denying defendant's motion for a special instruction regarding proof of defendant's blood alcohol concentration because: (1) defendant's argument is based on the erroneous premise that the instruction given by the court created an impermissible presumption; and (2) the court's instructions adequately informed the jury of the law as applied to the evidence presented at trial.

Appeal by Defendant from judgment entered 16 October 2007 by Judge Kenneth F. Crow in Pitt County Superior Court. Heard in the Court of Appeals 20 August 2008.

*Attorney General Roy Cooper, by Special Counsel Isaac T. Avery, III, and Assistant Attorney Generals Kathryne E. Hathcock and Christopher W. Brooks, for the State.*

*The Law Office of Matthew J. Davenport, P.A., by Matthew J. Davenport, for Defendant.*

ARROWOOD, Judge.

John Narron, III (Defendant) appeals from judgment entered upon his conviction of impaired driving, in violation of N.C. Gen. Stat. § 20-138.1. We affirm.

Defendant was arrested on 13 January 2007 in Greenville, North Carolina, and charged with impaired driving. He was convicted in Pitt County District Court and appealed to Superior Court for trial *de novo*. On 5 February 2007 Defendant filed a motion to ·dismiss the charge of impaired driving, on the grounds that N.C. Gen. Stat. § 20-138.1 violated the North Carolina and U.S. Constitutions. He specifically challenged the statute's provision addressing chemical analysis as evidence of a defendant's blood alcohol concentration. On 10 August 2007 Judge Clifton W. Everett, Jr., entered an order denying Defendant's dismissal motion.

Defendant was tried before a Pitt County jury on 15 October 2007. The State's evidence tended to show in pertinent part, the following: Officer W.O. Terry of the Greenville, North Carolina, Police Department testified that, while on patrol in the early morning hours of 13 January 2007, he saw Defendant in the driver's seat of a motor vehicle that was stopped "in the middle of the travel lane" on the left side of a downtown street. Terry approached Defendant and noticed that Defendant's eyes were red and glassy and that he had an odor of alcohol. Terry summoned a traffic safety officer and about five minutes later Greenville Police Department Corporal Michael Montanye arrived at the scene.

Officer Montanye testified that at 1:30 a.m. on 13 January 2007 he was on duty as a traffic safety officer in Greenville. In response to Terry's call, Montanye drove to Cotanche Street, where he saw the Defendant in a vehicle "stopped in the left travel lane." Defendant told Montanye he had been at a party where he drank three beers. The

officer observed that Defendant's eyes were glassy, that he was talkative, and that he smelled of alcohol. Officer Montanye performed two tests on an alcosensor, a portable machine that measures alcohol in a person's breath. When both tests showed a positive result for the presence of alcohol, Montanye placed defendant under arrest and took him to the Pitt County Detention center. There he administered an Intoxylizer test which showed an alcohol concentration of 0.08.

Defendant did not present evidence at trial. After the presentation of evidence, the trial court submitted the case to the jury. Defendant moved for a special jury instruction regarding proof of the Defendant's blood alcohol concentration; his motion was denied. The jury found Defendant guilty of impaired driving, and the court entered judgment accordingly. From this judgment and conviction, Defendant appeals.

## Standard of Review

Defendant argues that the statute under which he was convicted is unconstitutional. "[T]he judicial duty of passing upon the constitutionality of an act of the General Assembly is one of great gravity and delicacy. This Court presumes that any act promulgated by the General Assembly is constitutional and resolves all doubt in favor of its constitutionality." *Guilford Co. Bd. of Education v. Guilford Co. Bd. of Elections*, 110 N.C. App. 506, 511, 430 S.E.2d 681, 684 (1993) (citing *Greensboro v. Wall*, 247 N.C. 516, 101 S.E.2d 413 (1958)) (other citations omitted). "In challenging the constitutionality of a statute, the burden of proof is on the challenger, and the statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground." *Guilford Cty. Bd. of Educ.*, 110 N.C. App. at 511, 430 S.E.2d at 684-85 (citing *Baker v. Martin*, 330 N.C. 331, 411 S.E.2d 143 (1991)) (other citation omitted). Moreover:

> A well recognized rule in this State is that, where a statute is susceptible to two interpretations—one constitutional and one unconstitutional—the Court should adopt the interpretation resulting in a finding of constitutionality.

*In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388 (1978) (citations omitted).

[1] Defendant argues that certain language in N.C. Gen. Stat. § 20-138.1(a)(2) (2007) renders the statute unconstitutional. N.C. Gen. Stat. § 20-138.1 provides in pertinent part that:

(a) A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:

> (1) While under the influence of an impairing substance; or

> (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration[.]

Defendant contends that the provision that "[t]he results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration" in N.C. Gen. Stat. § 20-138.1(a)(2) "constitutes a mandatory presumption violative of his right to due process secured by the Fifth and Fourteenth Amendments to the U.S. Constitution." We disagree.

Defendant asserts a violation of the "principles of due process of law which require the State to prove beyond a reasonable doubt every essential element of the crime charged and which preclude placing upon a defendant any burden to prove the nonexistence of any such element." *State v. White*, 300 N.C. 494, 499, 268 S.E.2d 481, 485 (1980) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508 (1975)). "The three essential elements of the offense of impaired driving are (1) driving a vehicle (2) upon any public vehicular area (3) while under the influence of an impairing substance or '[a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of [0.08] or more.' N.C.G.S. § 20-138.1 [(2007)]". *State v. Denning*, 316 N.C. 523, 524, 342 S.E.2d 855, 856-57 (1986).

Thus, "there are two ways to prove the single offense of impaired driving: (1) showing appreciable impairment; or (2) showing an alcohol concentration of 0.08 or more." *State v. McDonald*, 151 N.C. App. 236, 244, 565 S.E.2d 273, 277 (2002) (citing *State v. Coker*, 312 N.C. 432, 440, 323 S.E.2d 343, 349 (1984)). The present appeal concerns proof of impairment by showing an alcohol concentration of .08 or more. N.C. Gen. Stat. § 20-4.01(1b) (2007), defines "alcohol concentration" as "[t]he concentration of alcohol in a person, expressed either as: a. Grams of alcohol per 100 milliliters of blood; or b. Grams of alcohol per 210 liters of breath." N.C. Gen. Stat. § 20-4.01(3a) (2007) defines "chemical analysis" in relevant part as "[a] test or

tests of the breath [or] blood . . . of a person to determine the person's alcohol concentration or presence of an impairing substance, performed in accordance with G.S. 20-139.1, including duplicate or sequential analyses."

In the instant case, the chemical analysis was performed on an Intoxilyzer 5000 machine, which showed Defendant's blood alcohol concentration to be eight one-hundredths grams of alcohol per 210 liters of breath (.08). "The Intoxilyzer is a breath-testing instrument approved for use by the North Carolina [Department of Health and Human Services (DHHS).] Pursuant to N.C. Gen. Stat. § 20-139.1 [(2007)], [DHHS] has adopted procedures for the use of this instrument which are codified at [10A N.C.A.C. 41B.0320 and 41B.0321 (December 2007)]." Machines such as the Intoxilyzer 5000 have been used for decades to measure blood alcohol concentration by chemical analysis of an individual's breath. *See, e.g., State v. Powell*, 264 N.C. 73, 140 S.E.2d 705, (1965) (upholding admission of Breathalyzer results). Appellate cases have noted the general reliability of this chemical analysis, observing as early as 1984 that "the science of breath analysis for alcohol concentration has become increasingly reliable . . . and increasingly accepted as a means for measuring blood alcohol concentration." *State v. Smith*, 312 N.C. 361, 372, 323 S.E.2d 316, 322 (1984). *Smith* expressly associated the reliability of chemical analysis with the provisions of N.C. Gen. Stat. § 20-138.1:

[S]cientific and technological advancements which have made possible this type of analysis have removed the necessity for a subjective determination of impairment[.] . . . Indeed, our legislature's recognition of this reliable and accurate innovation of blood alcohol concentration testing is manifested in N.C.G.S. § 20-138.1(a)(2) which now provides that a person who "after having consumed sufficient alcohol that he has, at any relevant time after driving, an alcohol concentration of [0.08] or more", commits the offense of impaired driving.

*Id.* at 373, 323 S.E.2d at 323.

However, under N.C. Gen. Stat. §§ 20-138.1 and 139.1, statutory criteria must be met before results of a chemical analysis are admissible in court. The defendant may challenge the admissibility of a chemical analysis of his blood alcohol level. N.C. Gen. Stat. § 139.1 (2007) provides in relevant part that:

(a) In any implied-consent offense under G.S. 20-16.2, a person's alcohol concentration . . . as shown by a chemical analysis is

admissible in evidence. This section does not limit the introduction of other competent evidence as to a person's alcohol concentration or results of other tests showing the presence of an impairing substance, including other chemical tests.

(b) The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration. A chemical analysis of the breath administered pursuant to the implied-consent law is admissible in any . . . proceeding if . . .

(1) It is performed in accordance with the rules of the Department of Health and Human Services.

(2) The person performing the analysis had . . . a current permit . . .

N.C. Gen. Stat. § 20-138.1 states:

(a1) A person who has submitted to a chemical analysis of a blood sample, pursuant to G.S. 20-139.1(d), may use the result in rebuttal as evidence that the person did not have, at a relevant time after driving, an alcohol concentration of 0.08 or more.

. . . .

(b1) Nothing in this section shall preclude a person from asserting that a chemical analysis result is inadmissible pursuant to G.S. 20-139.1(b2).

In addition to technical challenges set out in the statutes, a defendant presumably could impeach the admissibility, credibility, or weight of the results of chemical analysis in traditional ways.

As a corollary of the accepted reliability of chemical analysis, and of and the presence of statutory standards for their admissibility, the longstanding common law rule is that results of a chemical analysis are sufficient evidence to submit the issue of a defendant's alcohol concentration to the factfinder:

Once the trial court determined that the chemical analysis of defendant's breath was valid, then the reading constituted reliable evidence and was sufficient to satisfy the State's burden of proof under N.C. Gen. Stat. § 20-138.1(a)(2).

*State v. Phillips*, 127 N.C. App. 391, 394, 489 S.E.2d 890, 892 (1997) (citing *State v. Shuping*, 312 N.C. 421, 323 S.E.2d 350 (1984)). In 2006 the North Carolina General Assembly formally codified this rule by amending N.C. Gen. Stat. § 20-138.1 to state that "[t]he results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration[.]" Defendant asserts that this amendment creates an impermissible presumption. We do not agree.

"A presumption of fact is defined as an inference of the existence of one fact from the existence of some other fact, or an inference as to the existence of a fact not actually known, arising from its usual connection with another which is known." *Bryant v. Burns-Hammond Const. Co.*, 197 N.C. 639, 643, 150 S.E. 122, 124 (1929). "Inferences and presumptions are a staple of our adversary system of fact finding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *State v. White*, 300 N.C. 494, 499-500, 268 S.E.2d 481, 485 (1980). The North Carolina Supreme Court has explained further that:

> The word presumption, as lucidly pointed out by STANSBURY, N. C. EVIDENCE § 215 (2d Ed., 1963), has been used in different senses, but always upon the premise that when a certain basic fact is established another (presumed) fact is assumed or inferred. The following situations illustrate the varying uses of the word presumption: (1) If evidence to disprove the presumed fact will not be heard, we have a rule of substantive law, sometimes loosely called "a conclusive presumption"; (2) If the basic fact authorizes, but does not compel, the jury to find the assumed facts, we have a permissible inference or *prima facie* evidence; (3) If the basic fact compels the jury to find the assumed fact unless and until sufficient evidence of its nonexistence has been introduced, we have a true presumption, and, in the absence of sufficient proof to overcome it, the jury must find according to the presumption.

*State v. Cooke*, 270 N.C. 644, 649, 155 S.E.2d 165, 168 (1967).

In the instant case, we are called upon to decide whether the provision that "results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration" creates an unconstitutional presumption. We are concerned with the interpretation of "shall be deemed sufficient evidence to prove," as there is no

dispute about the phrases "results of a chemical analysis" or "a person's alcohol concentration." We conclude that the challenged provision does not create an evidentiary or factual presumption, but simply states the standard for *prima facie* evidence of a defendant's alcohol concentration.

" 'Statutory interpretation properly begins with an examination of the plain words of the statute.' If the language of a statute is clear, then the Court must implement the statute according to the plain meaning of its terms." *State v. Crow*, 175 N.C. App. 119, 123, 623 S.E.2d 68, 71 (2005) (quoting *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992)). "Nontechnical statutory words are to be construed in accordance with their common and ordinary meaning." *Comr. of Insurance v. North Carolina Rate Bureau*, 54 N.C. App. 601, 605, 284 S.E.2d 339, 342 (1981) (citations omitted)).

As noted by Defendant, the word "shall" connotes that the action referred to is mandatory. "It is well established that 'the word 'shall' is generally imperative or mandatory." *Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 361 N.C. 372, 378, 646 S.E.2d 356, 360 (2007) (quoting *State v. Johnson*, 298 N.C. 355, 361, 259 S.E.2d 752, 757 (1979)). "The definition of the word 'deemed' in the legal context is 'considered' or 'treated as if.' BLACK'S LAW DICTIONARY 415 (6th ed. 1990); Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 254 (2d ed. 1995)." *Ward v. Wake Cty. Bd. of Educ.*, 166 N.C. App. 726, 731, 603 S.E.2d 896, 900 (2004) Black's Law Dictionary treats "sufficient evidence" as synonymous with "satisfactory evidence" which it defines as "evidence that is sufficient to satisfy an unprejudiced mind seeking the truth[;] Also termed sufficient evidence." BLACK'S LAW DICTIONARY 599 (8th ed. 2004). Finally, the word "prove" means "to establish the truth of a fact or hypothesis by satisfactory evidence." BLACK'S LAW DICTIONARY 1261 (8th ed. 2004).

The phrase at issue contains no obscure or technical terms. We conclude that in the context of "results of chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration" the meaning of the phrase "shall be deemed sufficient evidence to prove" is that properly admitted results of a chemical analysis "must be treated as *prima facie* evidence of" a defendant's alcohol concentration.

"In interpreting statutes, . . . it is always presumed that the Legislature acted with full knowledge of prior and existing law."

*Investors, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977). Accordingly, our conclusion is further supported by the fact that the language of the amendment is essentially the same as the established common law rule that "[o]nce it is determined that the chemical analysis of the defendant's breath was valid, then a reading of [0.08] constitutes reliable evidence and is sufficient to satisfy the State's burden of proof as to this element of the offense of DWI." *Shuping*, 312 N.C. at 431, 323 S.E.2d at 356.

We also conclude that the provision that "results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration," which we construe as a statement of the standard for *prima facie* evidence of a person's alcohol concentration, does not create a legal presumption.

As discussed above, the essential feature of a true presumption is that proof of a basic fact permits or requires the fact finder to find a different, elemental, fact. For example, "[m]alice may be presumed upon proof beyond a reasonable doubt of a killing by the intentional use of a deadly weapon, nothing else appearing." *State v. Weeks*, 322 N.C. 152, 172, 367 S.E.2d 895, 907 (1988) (citation omitted). Thus, proof beyond a reasonable doubt of the basic fact—a defendant's use of a deadly weapon to commit a killing—allows the jury to find the elemental fact—that the defendant acted with malice.

The Defendant does not articulate what he contends is the elemental fact to be "presumed" upon proof of the basic fact of the existence of a properly admitted chemical analysis of his alcohol concentration, and we conclude there is none. For example, the statute does not state that "results of a chemical analysis shall be deemed sufficient evidence to prove" e.g., a person's degree of intoxication, or his operation of a vehicle on a state highway.

The "result of a chemical analysis" is a report of a person's alcohol concentration, and the statute provides that the result of such a test constitutes *prima facie* evidence of the defendant's alcohol concentration as reported in the results. In other words, the statute simply authorizes the jury to find that the report is what it purports to be—the results of a chemical analysis showing the defendant's alcohol concentration. This is the definition of *prima facie* evidence of an element of any criminal offense or civil cause of action—that the jury may find it adequate proof of a fact at issue. However, there is no "presumption" created with regards to some other element or factual issue. "Appellee contends that the instruction at issue here did not

create a presumption, mandatory or otherwise. . . . We agree that no such presumption was established here. . . . The instruction did not state that upon finding certain predicate facts, the jury could infer that a necessary element of the [State's] case had been met." *Koonce v. Pepe*, 99 F.3d 469, 473 (1st Cir. 1996).

We conclude that the statutory amendment simply codifies the common law threshold for *prima facie* evidence of a defendant's alcohol concentration. Therefore, there was no need for the trial court to call to the jury's attention that the chemical analysis was the basis of the trial court's determination that the State had presented *prima facie* proof of the element. If a case is submitted to the jury, then by definition, the court has determined that the State presented "sufficient evidence to prove" each of the elements of the offense. However, we perceive no prejudice to the Defendant in the court's statement to the jury that "results of a chemical analysis are deemed sufficient evidence to prove a person's alcohol concentration."

This assignment of error is overruled.

---

[2] Defendant also argues that the trial court erred by denying his motion for a special jury instruction. We disagree.

"A trial court's jury instruction 'is for the guidance of the jury.' Furthermore, the purpose 'is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict.' 'In a criminal trial the judge has the duty to instruct the jury on the law arising from all the evidence presented.' A judge has the obligation 'to instruct the jury on every substantive feature of the case.' "

*State v. Smith*, 360 N.C. 341, 346-47, 626 S.E.2d 258, 261 (2006) (quoting *Sugg v. Baker*, 258 N.C. 333, 335, 128 S.E.2d 595, 597 (1962); *State v. Williams*, 280 N.C. 132, 136, 184 S.E.2d 875, 877 (1971); *State v. Moore*, 75 N.C. App. 543, 546, 331 S.E.2d 251, 253 (1985); and *State v. Mitchell*, 48 N.C. App. 680, 682, 270 S.E.2d 117, 118 (1980)).

"However, '[t]he burden upon the defendant is to show more than a possibility that the jury applied the instruction in an unconstitutional manner.' Further, '[w]here the instructions to the jury, taken as a whole, present the law fairly and clearly to the jury, we will not find error even if isolated expressions, standing alone, might be considered erroneous.' "

*State v. Freeman*, 185 N.C. App. 408, 419, 648 S.E.2d 876, 884 (2007) (quoting *State v. Smith*, 360 N.C. 341, 347, 626 S.E.2d 258, 261-62 (2006); and *State v. Morgan*, 359 N.C. 131, 165, 604 S.E.2d 886, 907 (2004)).

Defendant's argument, that the trial court erred by denying his motion for a special instruction, is premised on his contention that the instruction given by the court created an impermissible presumption. As discussed above, we have rejected this argument. We conclude that the court's instructions adequately informed the jury of the law as applied to the evidence presented at trial. This assignment of error is overruled.

For the reasons discussed above, we conclude the Defendant had a fair trial, free of reversible error.

No error.

Judges BRYANT and JACKSON concur.