An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-424

NORTH CAROLINA COURT OF APPEALS

Filed:  4 November 2014

STATE OF NORTH CAROLINA

v.

JOHNNIE JACKSON, III

Wake County
Nos. 11 CRS 208650; 727961

Appeal by defendant from judgment entered 22 May 2013 by Judge Carl R. Fox in Wake County Superior Court.  Heard in the Court of Appeals 8 September 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General John W. Congleton, for the State.*
>
> *James N. Freeman, Jr. for defendant.*

McCULLOUGH, Judge.

Defendant Johnnie Jackson, III, appeals from his conviction for driving while impaired.  Based on the reasons stated herein, we hold that defendant received a trial free from prejudicial and plain error.

## I.  Background

On 15 April 2011, defendant was arrested and charged with driving while impaired and driving while license revoked.

Defendant was also issued a citation for possession of an open container of an alcoholic beverage.

Defendant's trial commenced at the 20 May 2013 session of Wake County Superior Court, Judge Carl Fox presiding.

Officer Jeffrey D. Noble of the Raleigh Police Department testified for the State. On 15 April 2011 at 3:00 a.m., Officer Noble was on patrol near the intersection of New Bern Avenue and Tarboro Road in Raleigh, North Carolina. Officer Noble was traveling southbound on Tarboro Road from Eaton Street when he observed a Chevy pickup truck driving northbound toward his direction without its headlights on. Officer Noble followed the truck to the intersection of New Bern Avenue and Tarboro Road and observed the truck make a right turn at a red light marked "no right on red." Officer Noble activated his blue lights and attempted to stop the truck. Officer Noble testified that

> [a]fter activating my blue lights I had no response from the driver of that vehicle. The vehicle continued at about the thirty-to forty-mile-per-hour speed in the 45-mile-per-hour zone. I activated by siren for a short time until the vehicle came to a stop finally probably about a half mile down the road after running an additional red light.

Another officer was in the same area and assisted Officer Noble with the traffic stop. Officer Noble approached the driver's side of the truck and smelled the odors of alcohol and

marijuana. Defendant was the driver and there was one passenger in the vehicle. Officer Noble asked defendant if he had had anything to drink and defendant stated that he had consumed two beers. Defendant also admitted to smoking marijuana earlier that day. Officer Noble observed that defendant's eyes were bloodshot and glassy, that his breath smelled of alcohol, and that his speech was slurred.

Defendant was taken out of his vehicle, secured in handcuffs, and placed in the back of Officer Noble's patrol car. Officer Noble searched defendant's vehicle and located marijuana and several open twenty-four (24) ounce cans of beer. Officer Noble also determined that defendant had a suspended driver's license. Defendant was arrested for driving with a suspended driver's license and transported to the Wake County jail.

Officer Noble testified that, upon arrival at the Wake County jail he requested defendant to submit to the horizontal gaze nystagmus test ("HGN test"), a field sobriety test. Officer Noble stated that in administering the HGN test on a subject, he was looking for "involuntary jerking of [the] eyes."

Officer Noble further testified that when he administered the HGN test to defendant, that defendant "ha[d] very strong motions of his eyes as he followed the stimulus in a jerking

motion" and observed "the nystagmus at maximum deviation in both of [defendant's] eyes. Based on his training and experience, it was Officer Noble's opinion that defendant had a high level of impairment and that defendant "had consumed a sufficient amount of alcohol to impair his faculties, both physically and mentally."

Thereafter, Officer Noble asked defendant if he would be "willing to submit to a test of his breath on the intoxilyzer ECR 2 instrument[.]" ("Intoxilyzer"). Defendant signed a form, submitted himself to the chemical analysis of his breath, and registered a result of 0.16.

On 22 May 2013, a jury found defendant guilty of driving while license revoked, driving while impaired, and possession of an open container of alcohol in the passenger area. Defendant was sentenced to twenty-four (24) months imprisonment for his driving while impaired conviction.

Defendant gave notice of appeal in open court.

## II. Discussion

On appeal, defendant argues that (A) the trial court erred by receiving Officer Noble as an expert in the area of HGN test administration and interpretation and that (B) the trial court

committed plain error by admitting the results of the Intoxilyzer.

A. Expert Testimony Regarding the HGN Test

In his first argument on appeal, defendant argues that the trial court erred by receiving Officer Noble as an expert in the administration and interpretation of the HGN test because Officer Noble did not have sufficient training or experience. In addition, defendant argues that Officer Noble's testimony failed to demonstrate that he had reliably applied the principles and methods of the HGN test in this case. We do not find defendant's arguments persuasive.

> It is well established that trial courts must decide preliminary questions concerning the qualifications of experts to testify or the admissibility of expert testimony. N.C. Gen. Stat. § 8C-1, Rule 104(a) (2005). When making such determinations, trial courts are not bound by the rules of evidence. *Id.* In this capacity, trial courts are afforded "wide latitude of discretion when making a determination about the admissibility of expert testimony." *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984). Given such latitude, it follows that a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion.

*Hughes v. Webster*, 175 N.C. App. 726, 732, 625 S.E.2d 177, 182 (2006).

Rule 702 of the North Carolina Rules of Evidence provides as follows:

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
> (1) The testimony is based upon sufficient facts or data.
> (2) The testimony is the product of reliable principles and methods.
> (3) The witness has applied the principles and methods reliably to the facts of the case.
> (a1) A witness, qualified under subsection (a) of this section and with proper foundation, may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following:
> (1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administered by a person who has successfully completed training in HGN.

N.C. Gen. Stat. § 8C-1, Rule 702(a) and (a1)(1) (2013). "North Carolina case law requires only that the expert be better qualified than the jury as to the subject at hand, with the testimony being 'helpful' to the jury." *State v. Davis*, 106

N.C. App. 598, 601, 418 S.E.2d 263, 267 (1992) (citation omitted).

The evidence demonstrated that Officer Noble received training in the administration of the HGN test in 2008, during basic law enforcement training. He was given opportunities to perform the HGN test in controlled environments.

Officer Noble was tendered as an expert in the HGN test, defendant objected, and a voir dire was conducted. During voir dire, Officer Noble testified that he completed a total of eight (8) hours of training, "a full day of lecture," on the HGN test. Officer Noble also took an eight (8) hour HGN test refresher class, amounting to a total of sixteen (16) hours of training on the HGN test. Officer Noble was also given materials and "studies that they have conducted on events such as alcohol impairment on the effect on the eyes as well as brain injuries and other forms of medical problems that would affect the eyes and the nystagmus of the eyes." He had administered the HGN test "well over a hundred" times and seen a correlation between the eye's involuntary movements with recorded breath alcohol concentrations.

Officer Noble testified that while administering the HGN test to defendant, defendant "ha[d] very strong motions of his

eyes as he followed the stimulus in a jerking motion." Officer Noble also observed "the nystagmus at maximum deviation in both of [defendant's] eyes." Officer Noble opined that defendant had a high level of impairment and that he "had consumed a sufficient amount of alcohol to impair his faculties, both physically and mentally."

Given Officer Noble's knowledge, experience, training, and education, he was better qualified than the jury regarding the administration and interpretation of the HGN test and his testimony on the issue of defendant's impairment was helpful to the jury. Therefore, we reject defendant's contention that the trial court abused its discretion by admitting Officer Noble's testimony as expert testimony.

Defendant further contends that Officer Noble's testimony failed to demonstrate that he applied the principles and methods reliably to the facts of the case. N.C. Gen. Stat. § 8C-1, Rule 702(a)(3).

Officer Noble testified that the HGN test is categorized as a standardized field sobriety test, which is governed by the National Highway Traffic Safety Administration. Officer Noble also testified that in order for an HGN test to be administered properly, it would require compliance with certain guidelines.

Officer Noble laid out the steps in the administration of the HGN test, which included the following, in pertinent part: checking to see if the subject is wearing contacts or glasses; asking the subject to stand with his feet together, arms by his side; checking to see if the subject's pupils are of equal size; holding a stimulus several inches in front of the subject's eyes; asking the subject to follow the stimulus with his eyes while remaining still; and moving the stimulus from side to side. The next portion of the HGN test is called "eye and deviation." Officer Noble testified that he holds the stimulus "all the way out as far as they can focus on so all the white in their eyes disappears, just the blackness of your eye shows here at the corner of your eyelid[.]" The third portion of the HGN test is administered "to see that sustained jerking of the eyes is sustained prior to going all the way out to maximum deviation. There is an estimation of a 45-degree angle." Based on Officer Noble's training and experience, his observations of defendant's eyes while administering the HGN test indicated that defendant "had consumed a sufficient amount of alcohol to impair his faculties, both physically and mentally."

Defendant argues that Officer Noble disregarded "multiple directives from the training manual from failure to determine if

[defendant] wore eyewear, to the distance of the stimuli from [defendant] as he conducted the [HGN] test." Defendant also contends that in determining "at what degrees [Officer Noble] views nystagmus, an important indicator according to [Officer Noble], he guesses, rather than employ some sort of instrument or calculation."

Even assuming *arguendo* that Officer Noble's testimony was inadmissible because he violated Rule 702(a)(3), we hold that defendant cannot demonstrate that admission of the challenged testimony amounted to prejudicial error. N.C. Gen. Stat. § 15A-1443(a) provides that an "error[] relating to rights arising other than under the Constitution of the United States" is prejudicial "when there is reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2013). In addition to the disputed testimony, Officer Noble also testified that defendant was driving his vehicle at 3:00 a.m. without his headlights on, made an illegal turn, and ran a red light. Defendant smelled of alcohol and marijuana, had bloodshot and glassy eyes, and had slurred speech. Officer Noble found opened cans of alcohol in defendant's vehicle and defendant admitted that he had consumed

two beers and smoked marijuana earlier that day. Officer Noble also testified that defendant voluntarily took an Intoxilyzer test and the result indicated he had a blood alcohol content of 0.16. In light of this overwhelming evidence of defendant's impairment, we hold that he cannot establish that the admission of Officer Noble's testimony regarding the HGN test amounted to prejudicial error.

    B.    Testimony Regarding the Results of the Intoxilyzer

In his next argument, defendant contends that the trial court committed plain error by admitting the results of his breath test using the Intoxilyzer when the State failed to establish that Officer Noble had a valid permit to perform the test. Defendant argues that no permit or certificate was admitted into evidence and that Officer Noble never testified that he had a current permit issued by the Department of Health and Human Services ("DHHS") in violation of N.C. Gen. Stat. 20-139.1.

N.C. Gen. Stat. § 20-139.1(b) provides that

> The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration. A chemical analysis of the breath administered pursuant to the implied-consent law is admissible in any court or administrative hearing or proceeding if it meets both of the following requirements:

> (1) It is performed in accordance with the rules of the Department of Health and Human Services.
> (2) *The person performing the analysis had, at the time of the analysis, a current permit* issued by the Department of Health and Human Services authorizing the person to perform a test of the breath using the type of instrument employed.
>
> . . . .
>
> For purposes of establishing compliance with subdivision (b)(2) of this section, the court or administrative agency *shall take judicial notice of the list of permits* issued to the person performing the analysis, the type of instrument on which the person is authorized to perform tests of the breath, and the date the permit was issued. . . .

N.C. Gen. Stat. § 20-139.1 (2013) (emphasis added).

Here, the record shows that Officer Noble testified that he was issued a permit on 18 March 2011 to operate the Intoxilyzer. However, Officer Noble did not indicate whether his permit was issued by DHHS. He testified that he conducted the test in a manner which was prescribed by DHHS. Moreover, the State did not introduce a permit into evidence and the trial court did not take judicial notice of a permit issued to Officer Noble.

Assuming *arguendo* that the trial court erred by admitting the results of the Intoxilyzer by failing to comply with the

requirements of N.C. Gen. Stat. § 20-139.1(b)(2), such error does not arise to the level of plain error. *See State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (stating that "[f]or error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial . . . a defendant must establish prejudice that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty'") (citation omitted).

"The three essential elements of the offense of impaired driving are (1) driving a vehicle (2) upon any public vehicular area (3) while under the influence of an impairing substance or [a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of [0.08] or more." *State v. Narron*, 193 N.C. App. 76, 79, 666 S.E.2d 860, 863 (2008) (citations and quotation marks omitted); *see also* N.C. Gen. Stat. § 20-138.1 (2013). "Thus, there are two ways to prove the single offense of impaired driving: (1) showing appreciable impairment; or (2) showing an alcohol concentration of 0.08 or more." *Narron*, 193 N.C. App. at 79, 666 S.E.2d at 863 (citation and quotation marks omitted).

> Although the primary value of [this challenged testimony] was to establish that

> defendant's blood alcohol content was above the statutory limit . . . , the State was not required to establish that level to prove that defendant was driving while impaired (DWI). In fact, the State may prove DWI where the [blood alcohol content] is entirely unknown or less than [0.08]. The opinion of a law enforcement officer . . . has consistently been held sufficient evidence of impairment, provided that it is not solely based on the odor of alcohol.

*State v. Taylor*, 165 N.C. App. 750, 757-78, 600 S.E.2d 483, 489 (2004) (citations and quotation marks omitted).

In the case *sub judice*, the evidence demonstrated that Officer Noble observed defendant driving his vehicle on Tarboro Road at 3:00 a.m. without his headlights on, making a right turn at a red light marked "no right on red," running another red light, and driving a half mile down the road subsequent to Officer Noble's activation of his blue lights. Officer Noble smelled the odors of alcohol and marijuana as he approached defendant's vehicle. In addition, defendant admitted that he had consumed two beers and smoked marijuana. Officer Noble testified that defendant's eyes were bloodshot and glassy, that his breath smelled of alcohol, and that his speech was slurred. A search of defendant's vehicle resulted in the discovery of several open twenty-four ounce cans of beer.

This foregoing evidence was sufficient for a DWI conviction regardless of the results of the Intoxilyzer. Therefore, even if the trial court erred by admitting the results of the Intoxilyzer, we hold that any such error did not have a probable impact on the jury's finding that defendant was guilty of DWI. Accordingly, defendant's argument is overruled.

### III. Conclusion

We hold that defendant received a trial free from prejudicial or plain error.

No prejudicial error; no plain error.

Judges ERVIN and BELL concur.

Report per Rule 30(e).