IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-457

No. COA 20-722

Filed 7 September 2021

Johnston County, No. 18 CRS 57669

STATE OF NORTH CAROLINA

v.

PAYTON B. GUERRERO, Defendant.

Appeal by Defendant from judgment entered 16 December 2019 by Judge Keith O. Gregory in Johnston County Superior Court. Heard in the Court of Appeals 10 August 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kindelle McCullen, for the State.*

*John P. O'Hale for Defendant.*

GRIFFIN, Judge.

¶ 1    Defendant Payton B. Guerrero appeals from a judgment entered after a jury found him guilty of impaired driving. Defendant argues that the trial court erred by (1) denying Defendant's request for a special jury instruction; (2) failing to find two statutorily mandated mitigating factors; and (3) sentencing Defendant more harshly for exercising his right to a jury trial. We conclude that Defendant received a fair trial, free from reversible error.

## I.    Factual and Procedural History

¶ 2        On 15 December 2018, a North Carolina State Highway Patrol trooper placed Defendant under arrest for driving while impaired.  The trooper took Defendant to the Johnston County Jail where Defendant provided a breath sample to be analyzed by the Intoximeter EC/IR II.  The Intoximeter reported an alcohol concentration of 0.09.

¶ 3        Defendant pled not guilty to impaired driving in Johnston County District Court.  Following a bench trial, the judge found Defendant guilty of impaired driving and imposed a Level Five sentence pursuant to N.C. Gen. Stat. § 20-179.  Defendant gave notice of appeal in open court.

¶ 4        The case was called for trial in Johnston County Superior Court.  Defendant submitted a request for the following special jury instruction:

> I instruct you, ladies and gentlemen of the jury, that phrase "once it is determined that the chemical analysis of the defendant's breath was performed in accordance with the applicable rules and regulations, then a reading of 0.08 or more grams of alcohol per 210 liters of breath constitutes reliable evidence and is sufficient to satisfy the State's burden of proof as to this element of the offense of DWI" is a statement of the standard for prima facie evidence of a person's alcohol concentration sufficient to submit the case to the jury for its consideration.  This statement does not create a legal presumption of the defendant's alcohol concentration or the defendant's guilt.  As I have earlier instructed you what, if anything, the evidence tends to show, is for you, the members of the jury, to determine.

The trial judge denied Defendant's request for the special jury instruction and

delivered the following Pattern Instruction to the jury:

> [D]efendant has been charged with impaired driving. For you to find [D]efendant guilty of this offense, the State must prove three things beyond a reasonable doubt: First, that [D]efendant was driving a vehicle; second, that [D]efendant was driving that vehicle upon a highway or street within the state . . .[;] and third, at the time [D]efendant was driving that vehicle, [D]efendant had . . . consumed sufficient alcohol that at any relevant time after the driving [D]efendant had an alcohol concentration of 0.08 or more grams of alcohol per . . . 210 liters of breath. A relevant time is any time after the driving that the driver still has in the body alcohol consumed before or during the driving. The results of a chemical analysis are deemed sufficient evidence to prove a person's alcohol concentration.

Additionally, the judge instructed the jurors that (1) they "are the sole judges of the weight to be given to any evidence"; (2) they "should weigh all the evidence in the case"; (3) they "should consider all the evidence"; and (4) "it is [their] duty to find the facts and to render a verdict reflecting the truth." The jury found Defendant guilty of impaired driving.

¶ 5    The judge held a sentencing hearing after the jury returned its verdict. The judge did not find any aggravating factors. Defendant argued for three statutorily mandated mitigating factors: (1) Defendant had a slight impairment of his faculties resulting solely from alcohol, and Defendant's alcohol concentration did not exceed 0.09 at any relevant time after the driving; (2) Defendant had a safe driving record; and (3) Defendant voluntarily submitted himself to a mental health facility for

assessment and had voluntarily participated in all treatment recommended by such facility. Defendant submitted his driving record and substance abuse assessment to the court without objection from the State. Defendant did not submit proof that he voluntarily participated in the Alcohol Drug Education Traffic School ("ADETS") program recommended by his substance abuse assessment.

¶ 6        During the sentencing hearing, the judge stated,

> I spoke to the attorneys, and I made an overture, and I said, [b]ased on the evidence, I'll give you the same thing that Judge Willis gave you, if you want to accept responsibility and move forward. Mr. O'Hale said, Judge, he has a right to a trial. And I said, I know. But I wanted to make sure that if we could work this out, because I said, with the number, there's a strong possibility this jury will come back with a guilty plea – a guilty verdict. I mean, jurors hear numbers. Now, one of the things about at the superior court level, my job is not to punish you because you didn't take an offer. That's not what it's about. My job is to be fair and impartial, as I'm always going to be.

The judge subsequently asked Defendant,

> [L]et me ask you. You need to tell me the truth on this. Don't lie to me. If I have you tested today, what are you going to test illegal for? If it's marijuana or something like that, just tell me the truth now. Don't lie. Because if I have you tested and you lie, I'm going to hold you in contempt and give you 30 days. What will you test positive for if I test you today?
>
> DEFENDANT: Just marijuana.

Defendant did not assert his Fifth Amendment privilege or object when the judge questioned him about his prior drug use. Counsel for Defendant was present, but Defendant did not ask to speak with his attorney and did not have any conference with counsel.

¶ 7   The judge ultimately found one mitigating factor: that Defendant had a slight impairment of his faculties resulting solely from alcohol, and Defendant's alcohol concentration did not exceed 0.09 at any relevant time after the driving. He imposed a Level Five sentence. The judge sentenced Defendant to sixty days in jail and suspended the sentence. The judge placed Defendant on twelve months of supervised probation, "having received evidence and having found as fact that supervision is necessary." The special conditions of probation ordered that Defendant surrender his driver's license, complete twenty-four hours of community service within 180 days of the probation period, attend two Narcotics or Alcohol Anonymous classes per week, be tested for illegal substances thirty days from the sentencing date, and "remain on probation for the entire 12 [months]."

## II.   Analysis

¶ 8   Defendant argues that the trial court erred by (1) denying Defendant's request for a special jury instruction; (2) failing to find two statutory mitigating factors; and (3) sentencing Defendant more harshly for exercising his right to a jury trial.

**A. Jury Instruction**

¶ 9        Defendant argues that the trial court erred by "not instructing the jury on . . .

how to fully evaluate the State's Intoximeter evidence." Defendant claims the

Pattern Instruction did not allow the jury an "adequate opportunity to fully weigh"

the Intoximeter evidence "from the point of view of [Defendant's]'s theory of the case."

We disagree.

> When a request is made for a specific instruction, correct
> in itself and supported by evidence, the trial court, while
> not obliged to adopt the precise language of the prayer, is
> nevertheless required to give the instruction, in substance
> at least, and unless this is done, either in direct response
> to the prayer or otherwise in some portion of the charge,
> the failure will constitute reversible error.

*Calhoun v. State Highway and Pub. Works Comm'n*, 208 N.C. 424, 426, 181 S.E. 271,

272 (1935). Thus, "[a] specific jury instruction should be given when '(1) the requested

instruction was a correct statement of law and (2) was supported by the evidence, and

that (3) the instruction given, considered in its entirety, failed to encompass the

substance of the law requested and (4) such failure likely misled the jury.'" *Outlaw

v. Johnson*, 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008) (quoting *Liborio v.

King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (2002)). "Failure to give a

requested and appropriate jury instruction is reversible error if the requesting party

is prejudiced as a result of the omission." *Id.*

¶ 10       In North Carolina, "[a] person commits the offense of impaired driving" when

the individual

drives any vehicle upon any highway, any street, or any public vehicular area within this State . . . [a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration.

N.C. Gen. Stat. § 20-138.1(a)(2) (2019). The phrase "results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration" is a "statement of the standard for prima facie evidence of a person's alcohol concentration" and "does not create a legal presumption" or "prejudice to the defendant." *State v. Narron*, 193 N.C. App. 76, 84–85, 666 S.E.2d 860, 865–66 (2008) (internal marks omitted). Instead, "[t]he statute simply authorizes the jury to find that the report is what it purports to be—the results of a chemical analysis showing the defendant's alcohol concentration." *Id.* at 84, 666 S.E.2d at 866.

Similarly, the North Carolina Supreme Court has held that the pattern jury instruction's language stating the results of a chemical analysis shall be "deemed sufficient evidence to prove a person's alcohol concentration[,]" and the language "adequately convey[s] the substance of [the] defendant's requested instructions" when additional language explains that the jurors are "the sole judges of the credibility of each witness and the weight to be given to the testimony of each witness" and "that if they decided that certain evidence was believable, they must then determine the importance of that evidence in light of all other believable evidence in

the case." *State v. Godwin*, 369 N.C. 604, 614–15, 800 S.E.2d 47, 53–54 (2017) (internal quotation marks omitted).

¶ 12     In *State v. Beck*, this Court held that instructing the jury that "(1) it was the 'sole judge[] of the weight to be given [to] any evidence'; (2) it was the jury's 'duty to decide from [the] evidence what the facts are'; (3) the jury 'should weigh all the evidence in the case'; and (4) the jury 'should consider all of the evidence'" lets the jury know "that it possesse[s] the authority to determine the weight of any evidence offered to show that the [d]efendant was—or was not—impaired." *State v. Beck*, 233 N.C. App. 168, 172, 756 S.E.2d 80, 83 (2014). Thus, statements such as these "signal[] to the jury that it [is] free to analyze and weigh the effect of the breathalyzer evidence along with all the evidence presented during the trial." *Godwin*, at 614, 800 S.E.2d at 54.

¶ 13     In the present case, the trial court's instruction, "in its entirety . . . encompass[es] the substance of the law requested." *Outlaw*, 190 N.C. App. at 243, 660 S.E.2d at 559. Further, the trial judge instructed the jurors that (1) they "are the sole judges of the weight to be given to any evidence"; (2) they "should weigh all the evidence in the case"; (3) they "should consider all the evidence"; and (4) "it is [their] duty to find the facts and to render a verdict reflecting the truth." The jury was not misled. As in *Godwin* and *Beck*, these statements "signaled to the jury that [they] were] free to analyze and weigh the effect of the [Intoximeter] evidence along with all

the evidence presented during the trial." *Godwin*, at 614, 800 S.E.2d at 54.

**B. Mitigating Factors**

¶ 14        Defendant argues that the trial court erred by failing to find two statutory mitigating factors. Defendant argues this error is prejudicial because he received supervised probation as part of his sentence. We disagree.

¶ 15        N.C. Gen. Stat. § 20-179 governs the sentencing of defendants convicted of impaired driving. *State v. Geisslercrain*, 233 N.C. App. 186, 190, 756 S.E.2d 92, 95 (2014). "[A] defendant's sentencing range under N.C. Gen. Stat. § 20-179 is determined by the existence and balancing of aggravating and mitigating factors," *id.*, and once a defendant is convicted for impaired driving, "the judge shall hold a sentencing hearing to determine whether there are aggravating or mitigating factors that affect the sentence to be imposed." N.C. Gen. Stat. § 20-179(a) (2019). "The offender bears the burden of proving by a preponderance of the evidence that a mitigating factor exists." N.C. Gen. Stat. § 20-179(a)(1) (2019). "The sentencing judge is required to find a statutory factor when the evidence in support of it is uncontradicted, substantial, and manifestly credible." *State v. Cameron*, 314 N.C. 516, 520, 335 S.E.2d 9, 11 (1985). "[W]henever there is error in a sentencing judge's failure to find a statutory mitigating circumstance *and* a sentence in excess of the presumptive term is imposed, the matter must be remanded for a new sentencing hearing." *State v. Daniel*, 319 N.C. 308, 315, 354 S.E.2d 216, 220 (1987) (emphasis

added).

¶ 16        "Under [N.C. Gen. Stat.] § 20-179, there are six sentencing ranges." *Geisslercrain*, 233 N.C. App. at 190, 756 S.E.2d at 95. "[T]he trial court is afforded much less discretion in sentencing under N.C. Gen. Stat. § 20-179 than under the Structured Sentencing Act." *Id.* "The statutes governing [impaired driving] sentencing are quite systematic and tiered, thus leaving little room to exercise discretion." *State v. Weaver*, 91 N.C. App. 413, 415–16, 371 S.E.2d 759, 760 (1988).

> [T]he process resembles "pigeonholing" as the statutes supply the trial judge with the step-by-step formula; i.e., to review the evidence, to determine whether the evidence supports the factors listed in gross aggravation, aggravation, or mitigation, to weigh the factors supported by the evidence, and to determine the level of punishment.

*Id.* at 416, 371 S.E.2d at 760. "[I]f the trial court determines that [t]he mitigating factors substantially outweigh any aggravating factors, the trial court *must* impose a Level Five punishment." *Geisslercrain*, 233 N.C. App. at 191, 756 S.E.2d at 95 (internal quotation marks omitted); N.C. Gen. Stat. § 20-179(f)(3) (2019). Level Five is the minimum sentencing level that a defendant can statutorily receive for impaired driving. N.C. Gen. Stat. §§ 20-179(f3)–(k) (2019). A Level Five sentence permits that a defendant

> may be fined up to two hundred dollars [] and shall be sentenced to a term of imprisonment that includes a minimum term of not less than 24 hours and a maximum

> term of not more than 60 days. The term of imprisonment
> may be suspended. However, the suspended sentence shall
> include the condition that the defendant: (1) Be imprisoned
> for a term of 24 hours as a condition of special probation;
> or (2) Perform community service for a term of 24 hours; or
> . . . (4) Any combination of these conditions.

N.C. Gen. Stat. § 20-179(k) (2019). Additionally, a defendant may be placed on

probation as part of a Level Five sentence. *Id.* ("If the defendant is placed on

probation, the judge shall impose a requirement that the defendant obtain a

substance abuse assessment and the education or treatment required by [N.C. Gen.

Stat. §] 20-17.6 for the restoration of a drivers license and as a condition of

probation."). The General Assembly has provided trial courts a great deal of

discretion in choosing the appropriate punishment within Level Five, including the

choice between supervised and unsupervised probation. N.C. Gen. Stat. §§ 20-179(k),

(r).

In this case, Defendant did not establish the first mitigating factor he argues

for: that Defendant voluntarily submitted himself to a mental health facility for

assessment and has voluntarily participated in any treatment recommended by such

facility. No evidence in the record shows that Defendant voluntarily participated in

the ADETS treatment recommended by his substance abuse assessment.

As to the second mitigating factor—that Defendant had a safe driving record—

we hold that Defendant met his burden of proof "by a preponderance of the evidence

that a mitigating factor exists." N.C. Gen. Stat. § 20-179(a)(1). Defendant submitted his driving record to the court without objection from the State. "[T]he evidence in support of [this factor was] uncontradicted, substantial, and manifestly credible." *Cameron*, 314 N.C. at 520, 335 S.E.2d at 11. Therefore, the trial judge erred by failing to find this statutory factor.

¶ 19        However, the trial judge did not impose "a sentence in excess of the presumptive term." *Daniel*, 319 N.C. at 315, 354 S.E.2d at 220. Using the "step-by-step formula" under the impaired driving sentencing statutes, the trial judge "determine[d] that [t]he mitigating factors substantially outweigh[ed] any aggravating factors," so, the judge imposed a Level Five punishment under N.C. Gen. Stat. § 20-179. *Weaver*, 91 N.C. App. at 416, 371 S.E.2d at 760; *Geisslercrain*, 233 N.C. App. at 191, 756 S.E.2d at 95 (internal quotation marks omitted); N.C. Gen. Stat. § 20-179(f)(3).

¶ 20        Even if the trial judge had found the two additional mitigating factors, the judge could not have sentenced Defendant at a lower sentencing level under the "systematic and tiered" impaired driving statutes. *Weaver*, 91 N.C. App. at 415–16, 371 S.E.2d at 760. Defendant's Level Five sentence, including probation, was allowed under the impaired driving statutes. N.C. Gen. Stat. § 20-179(k). Accordingly, Defendant cannot establish that he was prejudiced by the trial court's failure to find his safe driving record as a mitigating factor.

¶ 21  It is important to emphasize that trial courts are mandated by N.C. Gen. Stat. § 20-179(e) to determine whether statutory mitigating factors are apparent before imposing a sentence: "The judge shall . . . determine before sentencing under subsection (f) of this section whether any of the mitigating factors listed [in subsection (e)] apply to the defendant." N.C. Gen. Stat. § 20-179(e) (2019). Prior to sentencing, the trial judge stated, "[M]y hands are tied. I do have to find the mitigating factors. You're right. And I respect that, and I'm going to find that mitigating factors exist." Instead, the judge only found one mitigating factor in writing: slight impairment of Defendant's faculties. Moreover, the judge did not orally state his findings regarding this factor or any other factor in mitigation before pronouncing Defendant's sentence. Although the judge repeatedly spoke of his "responsibility" as superior to the "objectives" of the litigants before the court, the judge did not fulfill his statutorily mandated responsibility to find mitigating factors. This is despite the fact that evidence supporting the mitigating factor was "uncontradicted, substantial, and manifestly credible." *Cameron*, 314 N.C. at 520, 335 S.E.2d at 11.

¶ 22  Although we discern no reversible error, it is important for trial judges to follow through with their responsibility to determine mitigating factors orally and in writing before imposing a sentence. Aside from being mandated by statute, this responsibility is integral to promoting our courts' interests in procedural fairness, transparency, and respect for litigants before the court.

## C. Constitutional Error

¶ 23 Defendant contends that the trial court erred by sentencing Defendant more harshly because (1) Defendant exercised his right to a trial by jury, and (2) "the trial court relied on . . . uncharged criminal conduct not found by the jury." Defendant claims his arguments are evidenced by the trial judge stating the following:

> Now, as I said in chambers, I have no qualm saying it here, I spoke to the attorneys, and I made an overture, and I said, [b]ased on the evidence, I'll give you the same thing that Judge Willis gave you, if you want to accept responsibility and move forward. Mr. O'Hale said, Judge, he has a right to a trial. And I said, I know. But I wanted to make sure that if we could work this out, because I said, with the number, there's a strong possibility this jury will come back with a guilty plea – a guilty verdict. I mean, jurors hear numbers. Now, one of the things about at the superior court level, my job is not to punish you because you didn't take an offer. That's not what it's about. My job is to be fair and impartial, as I'm always going to be.

The judge continued speaking to Defendant:

> THE COURT: [L]et me ask you. You need to tell me the truth on this. Don't lie to me. If I have you tested today, what are you going to test illegal for? If it's marijuana or something like that, just tell me the truth now. Don't lie. Because if I have you tested and you lie, I'm going to hold you in contempt and give you 30 days. What will you test positive for if I test you today?
>
> DEFENDANT: Just marijuana.

We disagree with Defendant's two arguments.

¶ 24 "The standard of review for questions concerning constitutional rights is *de*

*novo.*" *State v. Fernandez*, 256 N.C. App. 539, 544 808 S.E.2d 362, 367 (2017). Further, "[t]he extent to which a trial court imposed a sentence based upon an improper consideration is a question of law subject to de novo review." *State v. Johnson*, 265 N.C. App. 85, 87, 827 S.E.2d 139, 141 (2019).

> The primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

N.C. Gen. Stat. § 15A-1340.12 (2019). "[I]n determining the sentence to be imposed, the trial judge may consider such matters as the age, character, education, environment, habits, mentality, propensities and record of the defendant." *Johnson*, 265 N.C. App. at 87–88, 827 S.E.2d at 141. "Such an inquiry is needed if the imposition of the criminal sanction is to best serve the goals of the substantive criminal law." *State v. Smith*, 300 N.C. 71, 82, 265 S.E.2d 164, 171 (1980) (finding that the trial judge's questions to the defendant about his prior criminal record was appropriate and that the defendant's failure to object or assert his Fifth Amendment privilege amounted to a waiver on appeal).

"The trial judge may also take into account the seriousness of a particular offense when exercising its discretion to decide the minimum term to impose within

the presumptive range." *Johnson*, 265 N.C. App. at 88, 827 S.E.2d at 141. "While a sentence within the statutory limit will be presumed regular and valid, such a presumption is not conclusive." *State v. Johnson*, 320 N.C. 746, 753, 360 S.E.2d 676, 681 (1987). "If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights." *Id.* "A criminal defendant may not be punished at sentencing for exercising [his] constitutional right to trial by jury." *State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990); *see also Johnson*, 265 N.C. App. at 88, 827 S.E.2d at 141 ("[O]ur Courts have held it is improper during sentencing for a trial judge to consider a defendant's refusal to accept a plea offer.").

> Where it can reasonably be inferred from the language of the trial judge that the sentence was imposed at least in part because [the] defendant did not agree to a plea offer by the state and insisted on a trial by jury, [the] defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result.

*State v. Tice*, 191 N.C. App. 506, 511–12, 664 S.E.2d 368, 372 (2008) (quoting *State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990)).

¶ 26    "The trial de novo represents a completely fresh determination of guilt or innocence." *State v. Butts*, 22 N.C. App. 504, 506, 206 S.E.2d 806, 808 (1974) (quoting *Colten v. Kentucky*, 407 U.S. 104, 117 (1972)).

> [U]nless it affirmatively appears that a second sentence
> has been increased to penalize a defendant for exercising
> rights accorded him by the constitution, a statute, or
> judicial decision, a longer sentence does not impose an
> unreasonable condition upon the exercise of those rights
> nor does it deprive him of due process. The presumption is
> that the judge has acted with the proper motive and that
> he has not violated his oath of office.

*State v. Stafford*, 274 N.C. 519, 531, 164 S.E.2d 371, 380 (1968). "The burden is on the defendant to overcome the presumption that a court acted with proper motivation in imposing a more severe sentence." *State v. Daughtry*, 61 N.C. App. 320, 324, 300 S.E.2d 719, 721 (1983).

As to Defendant's first argument, Defendant's Level Five punishment fit within the statutory limit and is "presumed regular and valid." N.C. Gen. Stat. § 20-179(k) (2019); *Johnson*, 320 N.C. at 753, 360 S.E.2d at 681. Defendant has not overcome the "presumption of regularity" by showing that "the court considered irrelevant and improper matter[s] in determining the severity of the sentence." *Id.*, 360 S.E.2d at 681. The trial judge did reference a chambers conversation where he stated he would give Defendant the same punishment as the district court judge if Defendant "want[ed] to accept responsibility and move forward." However, the judge went on to say the following in the sentencing hearing: "[n]ow, one of the things about at the superior court level, my job is not to punish you because you didn't take an offer. That's not what it's about. My job is to be fair and impartial, as I'm always

going to be." It cannot be reasonably "inferred from the language of the trial judge that the sentence was imposed at least in part because defendant did not agree to a plea offer." *Tice*, 191 N.C. App. at 511–12, 664 S.E.2d at 372 (citation omitted).

¶ 28    Further, the judge stated:

> This was not an accident . . . I saw the video. I heard what the man said. When you hit his car, he went down the embankment. You're lucky you didn't kill somebody. See that's what I think is missing here. You think it's just an accident . . . it might have appeared like an accident, but you could have killed somebody. That's no joke. So slight impairment, substance abuse assessment, safe driving record, polite and cooperative, you could have killed that man. He went down an embankment. You could have killed him. You could have killed yourself.

Taking "into account the seriousness of" the impaired driving offense is within the judge's discretion during sentencing. *Johnson*, 265 N.C. App. at 88, 827 S.E.2d at 141. Defendant has not met his burden to overcome the presumption "that the judge has acted with the proper motive and that he has not violated his oath of office." *Stafford*, 274 N.C. at 531, 164 S.E.2d at 380.

¶ 29    Defendant's second argument also fails. Defendant did not assert his Fifth Amendment privilege or object when the judge questioned him about his previous drug use. Defendant had counsel present, but Defendant did not ask to speak with his attorney nor did he conference with counsel. Defendant waived his Fifth Amendment argument for appeal. *Smith*, 300 N.C. at 82, 265 S.E.2d at 171.

### III.   Conclusion

We conclude that Defendant received a fair trial, free from reversible error.

NO ERROR.

Judges MURPHY and ARROWOOD concur.